UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
BERNARD WHITE,                                           :
                                                         :      **11-CV-2192 (PGG)**
                              Plaintiff,                 :
                                                         :
              -against-                                  :      PLAINTIFF'S RESPONSE TO
                                                         :      DEFENDANT PACIFICA
PACIFICA FOUNDATION and STEPHEN M.                       :      FOUNDATION'S STATEMENT OF
BROWN.                                                   :      UNDISPUTED MATERIAL FACTS
                                                         :      PURSUANT TO RULE 56.1 AND
                              Defendants.                :      STATEMENT OF ADDITIONAL
-------------------------------------------------------- X      UNDISPUTED MATERIAL FACTS
                                                                PURSUANT TO RULE 56.1


        Plaintiff, Bernard White ("Plaintiff" or "Plaintiff White"), by his attorneys, The Boyd Law

Group, PLLC, pursuant to Rule 56.1 of the Local Rules for the United States District Courts for

the Southern and Eastern Districts of New York, hereby respectfully submits this response to the

Rule 56.1 Statement of Defendants Pacifica Foundation ("Defendant Pacifica" or "Pacifica") (the

"Statement").  Following his response to Pacifica's Statement, Plaintiff also sets forth those facts

as to which he contends there are genuine issues to be tried consistent with the requirements of

Local Rule 56.1.


                 **RESPONSES TO PACIFICA'S RULE 56.1 UNDISPUTED FACTS**

1.  Admitted.

2.  Admits insofar as that is what is written in Pacifica's Employee Handbook.  (See
    Affirmation of Patrick J. Boyd ("Boyd Aff.") Exhibit J to the accompanying Affirmation
    of Patrick J. Boyd, Esq.).

3.  Plaintiff does not have sufficient information to admit or deny this statement.

4.  Plaintiff does not have sufficient information to admit or deny this statement.

5. Admitted.

6. Plaintiff does not have sufficient information to admit or deny this statement.

7. Admitted.

8. Admits insofar that Defendant Stephen Brown ("Defendant Brown" or "Brown") was a member of the local board.  However, Plaintiff does not have sufficient information to admit or deny the rest of this statement, in particular the definition of "relevant times."

9. Admits insofar as that was the testimony of LaVarn Williams ("Williams").  It should be noted that Williams has never seen Plaintiff's performance review. (Boyd Aff. Ex. B at p. 134; Boyd Aff. Ex. A).

10. Denied. (Boyd Aff. Ex. C at p. 17)

11. Admits insofar as that was the testimony of Williams.  It should be noted that although Williams is the Chief Financial Officer ("CFO"), she is not familiar with Pacifica's revenue.  (Boyd Aff. Ex. B at p. 45-49).

12. Admits insofar that "Brown sent a number of communications to various electronic listserv [sic] regarding Plaintiff."  Plaintiff does not have sufficient information to admit or deny the rest of this statement.

13. Admitted.

14. Admitted.

15. Admitted.

16. Plaintiff does not have sufficient information to admit or deny this statement.

17. Admits that these were some, but not an exhaustive list of Plaintiff's duties.

18. Admits that Pacifica quoted an incomplete passage from Plaintiff's internal complaint in or around 2007. (Boyd Aff. Ex. E at PAC000000197-PAC000000199).

19. Admits that Plaintiff was on a medical leave for around six (6) months ending in or around May 2009.  (Boyd Aff. Ex. D at p. 49).

20. Plaintiff does not have sufficient information to admit or deny this statement. Note that Williams was someone who as the Chief Financial Officer ("CFO"), she is not familiar with Pacifica's revenue.

21. Admits insofar that WBAI typically held three (3) major fund drives when Plaintiff was employed by Pacifica.  (Boyd Aff. Ex. D at p. 47).

22. Admits that Plaintiff was Program Director, and was in part in charge of overseeing fundraising drives.  Plaintiff however does not have sufficient information to admit or deny the rest of the statement, in particular Pacifica's definition of the term "often."

23. Denied.

24.  Plaintiff does not have sufficient information to admit or deny this statement.  (Boyd Aff. Ex. D at pp. 79-89; Boyd Aff. Ex. L at P0114-P0115).

25. Plaintiff does not have sufficient information to admit or deny this statement.  (Id.).

26. Denied.

27. Denied.  Plaintiff is not aware of any such committee.  (See Boyd Aff. Ex. I at ¶ 1).

28. Admits insofar that there was a decrease in WBAI listener pledges from 2005 until the May 2009, when Plaintiff was terminated.  However, Plaintiff does not have sufficient information as to Pacifica's definition of "significantly."  Furthermore, Pacifica is unable to confirm or take into account of whether the decrease in listener pledges was consistent with other public radio stations and whether the decrease correlated with the worse economic recessions in history.  (Boyd Aff. Ex. B at pp.72-73, 85-89).

29. Plaintiff does not have sufficient information to admit or deny this statement because the document used by Defendant Pacifica to prove this statement is for WBAI, not Pacifica. Furthermore it is unclear as to what Pacifica is comparing the "10 percent decrease" to.

30. Plaintiff does not have sufficient information to admit or deny this statement because the document used by Defendant Pacifica to prove this statement is for WBAI, not Pacifica. Furthermore, it is unclear as to what Pacifica is comparing the "5.3 percent decrease" to.

31. Plaintiff does not have sufficient information to admit or deny this statement because the document used by Defendant Pacifica to prove this statement is for WBAI, not Pacifica. Furthermore, it is unclear as to what Pacifica is comparing the "2 percent decrease" to.

32. Plaintiff does not have sufficient information to admit or deny this statement because the document used by Defendant Pacifica to prove this statement is for WBAI, not Pacifica. Furthermore, it is unclear as to what Pacifica is comparing the "15.7 percent decrease" to. Lastly, to the extent that Pacifica attempts to contribute a decrease of donations received to Plaintiff for the year 2009, it should be noted that Plaintiff did not work at all in 2009. (Plaintiff's Amended Complaint ("'Pl. Amended Compl.") at ¶¶42-43, 48).  Plaintiff was on medical leave from in or around December 2008 to in or around May 2009, he was then immediately suspended upon his return and then terminated prior to serving his entire suspension. (Id.).

33. Plaintiff does not have sufficient information to admit or deny this statement because the document used by Defendant Pacifica to prove this statement is for WBAI, not Pacifica. Furthermore, it is unclear as to what Pacifica is comparing the "24.4 percent decrease" to.

34. Plaintiff does not have sufficient information to admit or deny this statement because the document used by Defendant Pacifica to prove this statement is for WBAI, not Pacifica. Furthermore, it is unclear as to what Pacifica is comparing the "15.0 percent decrease" to.

35. Admits insofar that during a particular time period during Plaintiff's tenure as Program Director, there was a decline in listenership and revenue for WBAI.  However, the declines were due to factors that were out of Plaintiff's control, such as the lack of a development director at WBAI and an overall decline in all non-commercial media. (Boyd Aff. Ex. D at p. 45).

36. Admits insofar that this statement was stated by Williams.  However, Pacifica is unable to produce any note, writing, email, or document relating to this "assessment team." (Boyd Aff. Ex. B at pp. 115-117).

37. Admits insofar that this statement was stated by Williams.  However, Pacifica is unable to produce any note, writing, email, or document relating to this "assessment team." (Id.).

38. Denied.

39. Admits insofar that the quote was taken from an email produced by Pacifica.

40. Admits that Plaintiff was suspended.  Plaintiff however lacks sufficient information to admit or deny the rest of the statement.

41. Plaintiff does not have sufficient information to admit or deny this statement.

42. Admits insofar that Plaintiff was suspended, but lacks sufficient information to admit or deny the rest of the statement.

43. Admits that Plaintiff was suspended for three (3) days, but lacks sufficient information to admit or deny the rest of the statement.

44. Plaintiff lacks sufficient information to admit or deny this statement. The declaration submitted by Williams was never produced to Plaintiff prior to the submission of Pacifica's Motion for Summary Judgment, as such, Plaintiff never had a chance to examine or depose Williams relating to it.

45. Lacks sufficient information to admit or deny that Kathy Davis ("Davis") and Janet Coleman ("Coleman") "assumed Plaintiff's Program Director position while he was out on medical leave." (Boyd Aff. Ex. D at pp. 49).

46. Admits insofar that Plaintiff submitted s rebuttal letter in response to his suspension, but lacks sufficient information to admit or deny the rest of the statement.

47. Admits insofar that this was the testimony of Williams. It should again be reminded that although Williams claimed that she made the decision to terminate Plaintiff for a decrease in revenue and listenership, she however, as a CFO, h she is not familiar with Pacifica's revenue and radio rating. (Boyd Aff. Ex. B at pp. 45-49, 79-89).

48. Admits insofar that this was the testimony of Williams.

49. Admits insofar that this was the testimony of Williams. It should be noted that Pacifica is not able to produce any documentation, note, memorandum, or email relating to Williams' alleged investigation and interviews. (Boyd Aff. Ex. B at pp. 115-17).

50. Admits insofar that this was the testimony of Williams. It should be noted that Pacifica is not able to produce any documentation, note, memorandum, or email relating to Williams' alleged investigation and interviews. (Id.).

51. Admits insofar that this was the testimony of Williams. It should be noted that Pacifica is not able to produce any documentation, note, memorandum, or email relating to Williams' alleged investigation and interviews. In addition, Williams, as the CFO and someone

who works in the public radio industry, she is not familiar with Pacifica's revenue and the industry's condition.  (Boyd Aff. Ex. B at p. 152).  Lastly, Plaintiff does not sufficient information to admit or deny what Pacifica meant by "successful fundraising drive" as this is a conclusory statement without any basis of comparison or documentation to prove this point.

52. Admitted.

53. Plaintiff lacks sufficient information to admit or deny this statement.

54. Admits insofar that upon information and belief, Tony Bates at one point assumed the role of Program Director at WBAI.  Plaintiff lacks sufficient information to admit or deny the rest of the statement.

55. Admits insofar that this was the testimony of Williams.  It should be noted that Pacifica is not able to produce any documentation, note, memorandum, or email relating to Williams' alleged investigation and interviews. (Boyd Aff. Ex. B at pp. 115-17).   In addition, Williams, as the CFO and someone who works in the public radio industry, she is not familiar with Pacifica's revenue and the industry's condition.  (Boyd Aff. Ex. B at p. 152). Lastly, Plaintiff does not sufficient information to admit or deny what Pacifica meant by "successful fund drive" as this is a conclusory statement without any basis of comparison or documentation to prove this point.

56. Admitted.

57. Admitted that Lonnie Hicks was replaced by Williams, but lacks sufficient information to admit or deny the rest of the statement.

58. Admits insofar that Plaintiff's letter to David Edelson was in part to complain about Defendant Brown's discriminatory activities and how it affected Plaintiff's ability to perform his job.

59. Admits insofar that the complaint identified emails sent by Defendant Brown contained racially charged material.

60. Denied. Brown has sent emails and commissioned at least one (1) study on behalf of WBAI, which is the Pacifica radio station located in New York. (Boyd Aff. Ex. D at pp. 15-17; Boyd Aff. Ex. K at SB00170-SB171; Boyd Aff. Ex. M at SB000267). In addition, the affidavit submitted by Williams was never produced to Plaintiff prior to this motion, and as such, Plaintiff had no opportunity to examine Williams for the basis of her statement.

61. Admits that Plaintiff had no direct confirmation as to whether Defendant Brown sought permission from Pacifica to send emails relating to Plaintiff on Pacifica's behalf. However, since Brown was a member of the WBAI board and in his email, he always identified himself as a member of the WBAI board. (Boyd Aff. Ex. D at p. 52).

62. Admitted. However, given that Pacifica owns WBAI and that Brown consistently identified himself as writing on behalf of WBAI in his emails. (See Boyd Aff. Ex. L at P046-P050).

63. Denied.

64. Admits to the extent that it was approximately one (1) week after Plaintiff filed his internal complaint that a Dan Siegel ("Siegel") reached out to him. (Boyd Aff. Ex. D at p. 81). Admits to the rest of the statement. It should be noted that Pacifica has not provided any documentations evidencing any actual investigation.

65. Admitted.  In addition to emails, Plaintiff also provided Siegel with other information during their phone call.  (Id.).

66. Admitted.  However, Pacifica has not provided any evidence showing any actual investigation or follow-up on their part either.

67. Admits insofar that the email from Plaintiff's email to the Pacifica National Board included, among other things, the text of the complaint from September 2007. (Boyd Aff. Ex. E at PAC000000197-PAC000000199).


## PLAINTIFF'S STATEMENT OF ADDITIONAL UNDISPUTED FACTS


**PACIFICA AND WBAI BACKGROUND INFORMATION**

1. Defendant Pacifica is a listener supported community radio network.  (Pl. Amended Compl. at ¶11).

2. WBAI is the one of the five (5) local radio stations wholly owned by Pacifica across the country.  (Id. at ¶ 9; Boyd Aff. Ex. B at pp. 43-44).

3. WBAI is located in 120 Wall Street, New York, New York.  (Pl. Amended Compl. at ¶ 10).

4. Pacifica also has about one thousand affiliated radio stations across the country.  (Id. at ¶ 11).

5. Pacifica has a minimum of twenty-two (22) and a maximum of twenty-three (23) board of directors.  (Boyd Aff. Ex. C at p. 10).

6. Each of Pacifica's wholly owned local radio stations, including WBAI, have twenty-four (24) board of directors.  (Id. at p. 16).

7. The local board of directors is elected by members and listeners of the radio stations.

(Id.).

8.  The duty of the local board of directors is to handle and manage the affairs of the local radio stations.  (Id. at pp. 16-19).

9.  The Pacifica board of directors is chosen from the local board of directors.  (Id. at p. 16).

10. Each local station elects four (4) local board of directors to serve on the national board. (Id.; Boyd Aff. Ex. H at pp. 67-70).

11. Pacifica's bylaws govern WBAI as well.  (Boyd Aff. Ex. H at pp.51-54).

12. The local stations, such as WBAI, have no bylaws.  (Boyd Aff. Ex. H at pp. 59-61).

13. WBAI has never been issued an eviction notice from its landlord during all relevant time period.

14. WBAI has never produced any eviction notice that Williams alleged it received.

15. WBAI has periods of time where it pays its rent on time and times when it pays its rent late, even after Plaintiff has been terminated.  (Boyd Aff. Ex. B at p. 205-06).

16. In fact, WBAI was late on paying its rent on or around May 9, 2012, the date of Williams' deposition, due to no fault of Plaintiff since he was no longer there.  (Id. at p. 205).

**PLAINTIFF BERNARD WHITE**

17. Plaintiff started working for Defendant Pacifica at its WBAI local station in or about 1992 as the co-host of a morning program.  (Boyd Aff. Ex. D at p. 12).

18. In or around 1999, Plaintiff became the Acting Program Director of WBAI. (Id. at 13).

19. In or around 2000, Plaintiff became the fulltime Program Director of WBAI. (Id.).

20. The duties of a Program Director included overseeing programing, representing the station in public forums and to organizing fund drives. (Id.).

21. Donations generally come from listeners and members of WBAI and Pacifica, and various organizations.  (Boyd Aff. Ex. B at p. 72).

22. WBAI generally held fund raising campaigns in or around January, May and October. (Boyd Aff. Ex. D at p. 47).

23. On or around 2005, Plaintiff received his only performance evaluation.  (See Boyd Aff. Ex. A).

24. The performance evaluation gave Plaintiff a very positive review.  (Id. at P. 30-31).

25. During Plaintiff's tenure as Program Director from 2000 to 2009, the funds raised by WBAI did declined during a limited period of time.  (Boyd Aff. Ex. E at PAC000000215).

26. The decline occurred around the same time as the worst recession since the Great Depression.

27. Furthermore, Plaintiff did not have a Program Development Director to assist him in fund drives.  (Boyd Aff. Ex. D at p. 43).

28. Based upon information and belief, during Plaintiff's tenure as Program Director, non-commercial radio stations around country were also generally suffering from decline of listeners and donations.  (Id. at pp. 45; 72-73).

29. Furthermore, Defendant Brown, also a member of the local board, constantly sent negative and racially charged emails (where he identified himself as a member of the board) against Plaintiff to listeners and members of WBAI and Pacifica, all of whom are potential donors.  (Id. at p. 53).

30. Plaintiff consistently brought to the attention of the Pacifica and WBAI board of directors about Defendant Brown's discriminatory emails. (Id. at p. 82).

11

31. Starting as early as around 2003, Plaintiff notified the Pacifica Board of Directors and the WBAI board relating to Defendant Brown's discriminatory emails. (Id.).

32. Plaintiff specifically spoke with Defendant Pacifica's then executive director Dan Kaufman in or around 2003 relating to Brown's discriminatory animus. (Id. at pp. 83-84).

33. In or around 2006, Plaintiff specifically raised the issue with Pacifica's then executive director Greg Guma.  (Id.).

34. In or around September of 2007, Plaintiff wrote a letter to Pacifica's Board of Directors, addressed to the then Chairman of the Board Dave Edelson complaining about Defendant Brown's harassment and Brown's racism.  (Boyd Aff. Ex. E at PAC000000198-99).

35. Plaintiff has made numerous other complaints to Pacifica relating to the company's discriminatory environment and Defendant Brown's discriminatory animus.  (Boyd Aff. Ex. D at p. 84).

36. Plaintiff was contacted by Pacifica's attorney Siegel shortly afterwards by phone about Plaintiff's September 2007 complaint.  (Id. at pp. 80-81).

37. Plaintiff provided Siegel with additional facts and information, including copies of emails by Defendant Brown.  (Id. at pp.80-82).

38. Neither Pacifica nor Siegel ever followed-up with Plaintiff relating to his complaint.  (Id. at p. 82).

39. No documents were produced evidencing any actions were taken by Pacifica in response to Plaintiff's complaint.

40. Defendant Brown continued to send Brown discriminatory emails attacking Plaintiff through and until 2009, when Plaintiff was terminated.  (Id.).

41. In or around the latter part of 2008, WBAI's fund drive began to improve.  (Id. at p. 47).

42. In or around December of 2008, Plaintiff had a major surgery and went on medical leave. (Id. at p. 33-34).

43. Plaintiff returned to work from medical leave on or about May 3, 2009 but was immediately suspended for about three (3) days.  (Id. at p. 49).

44. On or about May 4, 2009, Plaintiff wrote an email to the Pacifica national board of directors reminding Pacifica again of the internal complaint he filed in or about September 2007 and that no action was taken by Pacifica.  (Boyd Aff. Ex. E at PAC000000197).

45. Then on or about May 8, 2009 Plaintiff was suspended again for two (2) weeks.  (Boyd Aff. Ex. L at P0112).

46. On or about May 11, 2009, Plaintiff wrote a rebuttal letter to Williams relating to his suspension.  (Id. at P0114-P0115).

47. Before Plaintiff's suspension was over, he was terminated on or about May 18, 2009. (Boyd Aff. Ex. D at p. 35).

48. After Plaintiff was terminated, Plaintiff attempted to search for a job in the radio industry. (Boyd Aff. Ex. D at pp. 10-12).

49. Plaintiff's job search effort included making calls, emailing and talking to radio stations and people in the radio industry.  (Id.; Boyd Aff. Ex. F).

50. In or about January 2012 Plaintiff started an internet radio station.  (Boyd Aff. Ex. D at p. 10).

**LAVARN WILLIAMS**

51. Williams lives in Union City, California.  (Boyd Aff. Ex. B at p. 26).

52. Williams primarily works out of Berkeley, California.  (Id.)

53. Prior to joining Pacifica, Williams worked for Xerox Corporation and Applied Materials during the years of 1990 to 1996.[1] (Id. at p. 11).

54. Williams claims that she retired in 1996.  (Id. at p. 11).

55. Williams then volunteered for Pacifica starting around 1997.  (Id. at p. 27).

56. Williams then unretired and started working for a compensated consultant position for KBFA, Pacifica's radio station near the Berkeley, California area from 1998 to 1999.  (Id. at pp. 28-30).

57. Williams then claimed to have retired again in or around April of 1999.  (Id. at pp. 30-31).

58. Williams then obtained a compensated consultant position with Abbots Laboratories from around 1999 to around 2002.  (Id. at pp. 31-32).

59. In or around 2002, Williams claims that she went back into retirement. (Id. at p. 32).

60. From in or around 2004 to 2008, Williams again volunteered for Pacifica. (Id. at pp. 32-33).

61. During the same period, Williams also won elections to join the KBFA and then eventually the Pacifica board.  (Id. at p. 33).

62. In or around January 2009, Williams claimed that she again went back into retirement. (Id. at pp. 33-34).

63. In or around February of 2009, Williams became the Chief Financial Officer ("CFO") of Pacifica. (Id. at pp. 10, 34).

64. Upon information and belief, Williams is the CFO of Pacifica (at least as of July 6,

---

[1] In Williams' deposition, she testified "I worked for Xerox from 1995 to about 1990."  The undersigned believes that she probably misspoke and meant from 1990 to 1995.

2012.[2]  (Declaration of LaVarn Williams in Support of Defendant's Motion for Summary Judgment).

65. From around May 2009 to January 2010, Williams also served as the interim general manager of WBAI.  (Boyd Aff. Ex. B at p. 10).

66. Williams reports to the Defendant Pacifica executive director.  (Boyd Aff. Ex. B at p. 38).

67. In addition, Williams also report to the Pacifica board of directors. (Boyd Aff. Ex. B at p. 9).

68. Both Arlene Engelhardt[3]  ("Engelhardt") and Grace Aaron ("Aaron") at some point served as the executive director while Williams was the CFO.  (Boyd Aff. Ex. B at pp. 37-38, 152, 212-213).

69. Engelhardt is white and/or Euro-American.[4] (Boyd Aff. Ex. B at p. 38).

70. Aaron is also white.  (Boyd Aff. Ex. D at p. 63).

**Plaintiff's Termination**

71. Williams testified that a committee was formed in or around 2007 study about the decrease of listenership in WBAI. (Boyd Aff. Ex. B at pp. 96-97).

72. Williams further testified that both she and Plaintiff were a part of this committee . (Id. at p. 97).

73. However, Plaintiff disputes that he was a part of this committee nor was he even aware of this committee. (Boyd Aff. Ex. I at ¶¶2-3).

---

[2] It has been reported on or about August 20, 2012 that Williams' contract as CFO was voted to not to be renewed by the Pacifica Board of Directors.  (Boyd Aff. Ex. N at pp. 1-2).

[3] It has been reported on or about August 20, 2012 that Engelhart's contract as Pacifica's Executive Director was initially voted to not to be renewed and then subsequently has been removed from her position immediately. (Boyd Aff. Ex. N at pp. 1-2).

[4]  It is interesting that Williams had no problem affirmatively identifying people who are African-American as "black" but ran around in circles when identifying Engelhardt's race. (See Boyd Aff. Ex. B at pp. 38, 101, 151, 171-72, 175-77).

74. Interestingly, Williams is not aware as to whether anyone ever told Plaintiff in 2008 about the alleged concern regarding the decrease in listenership. (Boyd Aff Ex. B at p. 97-98).

75. In or around April 2009, while Plaintiff was away on his six month medical leave that begun around December 2008, Williams, Aaron and Human Resource Manager Ahmad Anderson ("Anderson") allegedly began having discussion relating to suspending Plaintiff for performance reasons.  (Id. at p. 15).

76. Williams claimed that she went to New York City in or around April 2009 to form an assessment team to assess WBAI.  (Id. at pp. 117-120).

77. Williams was not named the Interim General Manager at WBAI in New York until May of 2009. (Id. at p. 10).

78. During Williams' visit to WBAI, she said that she talked to "loads of people."  (Id. at p. 115).

79. Williams also alleged that she did a lot of observations.  (Id. at pp. 129-130).

80. Williams said that she and the rest of the assessment team member, such as Aaron, even stayed overnight on numerous occasions in the WBAI offices.  (Id. at p. 121).

81. Williams testified that she spent approximately two (2) weeks to conduct her assessment.  (Id. at p. 115).

82. Williams claimed that the assessment led her and Anderson to first suspend Plaintiff for two weeks and then terminate Plaintiff prior to the end of his suspension.  (Id. at pp. 113-121).

83. Plaintiff's suspension and termination letters were signed by Williams. (Id. at p. 14).

84. Williams delivered the suspension and termination letters to Plaintiff.  (Id. at 16).

85. Williams stated the reason for suspending and then terminating Plaintiff was due to a decrease in listenership and revenue at WBAI, Plaintiff's behavior toward staff members, and the receipt of an eviction notice due to WBAI being late in rent payment.  (Id. at pp. 205-06).

86. It was not clear as to why Pacifica decided to terminate Plaintiff prior to the end of his suspension since the reason for both the suspension and the termination were the same.  (Id. at pp.113-21, 205-06).

87. Despite the claim of a thorough assessment by Williams, Pacifica is not able to produce any note, memorandum, email, or writing of any sort to relating to the alleged assessment.

88. Williams did not know whether termination procedure was properly followed in accordance with the Pacifica handbook.  (Id. at pp. 54-56).

89. Williams has never seen or reviewed Plaintiff's performance review.  (Id. at p. 134).

90. Williams stated that revenues were declining in WBAI from 2006 to the date that Plaintiff was terminated.  (Id. at pp. 48-49).

91. However, despite being the CFO, Williams she is not familiar with Pacifica's revenue.  (Id. at pp. 63-64).

92. As someone who works in the public radio industry, Williams is not aware of whether the rest of industry suffered the same decline in revenue and listenership, in particular during the recession that started around 2007.  (Id. at p. 152).

93. A document produced by Pacifica even showed that public radio has been in a steady decline since 2003.  (Id.; Boyd Aff. Ex. E at PAC000000133).

94. The entire Pacifica, even without WBAI, suffered a decrease of funds raised during the

17

same time period.  (Boyd Aff. Ex. B at pp. 63-65).

95. Although Williams stated that one of the reasons for suspending Plaintiff was due to a

    decline in listenership, she has not reviewed radio ratings. (<u>Id</u>. at pp.92-93).

96. In fact, Williams does not normally look at radio ratings and has no access to them.  (<u>Id</u>.).

97. Williams concluded that listenership was declining because there was a decline in

    donation, not radio ratings.  (<u>Id</u>. at pp. 79-84, 92-93).

98. Williams is very dismissive of reports that discuss radio ratings simply because she does

    not like the author, even though she does not review or have access to radio ratings. (<u>Id</u>.

    at pp. 125-128).

99. Williams dismisses the author because Williams thinks this author rants.  (<u>Id</u>.).

100.      However, Williams does not seem to mind Defendant Brown even though he

    rants. (<u>See</u> Boyd Aff. Ex. O; <u>See also</u> Boyd Aff. Ex. K at SB000196-SB000202).

101.       WBAI made an accounting error for 2008, which as result meant that the revenue

    generated that year was higher than it was originally calculated.  (Boyd Aff. Ex. B at pp.

    67-69).

102.      In fact, prior to Plaintiff's medical leave, revenue began to improve near the end

    of 2008 at Pacifica.  (Boyd Aff. Ex. D at p. 48).

103.      Williams claimed that after the suspension and termination of Plaintiff, WBAI did

    much better in its May 2009 fund drive than the January 2009 fund drive.  (Boyd Aff. Ex.

    B at pp. 18-20).

104.      Plaintiff was, as previously stated, on medical leave in January 2009.  (Boyd Aff.

    Ex. D at p. 47).

105.      Also, the stock market and the recession began to stabilize and rebound in or

around the spring 2009.

106.    One additional reason for Plaintiff's termination was the alleged receipt of an

eviction notice from WBAI's landlord due to being arrear in rent payment.  (Boyd Aff.

Ex. B at p. 119).

107.    Again, no eviction notice was ever served and it was never produced by Pacifica.

108.    WBAI has continued to be late in paying its rent after Plaintiff was terminated.

(Boyd Aff. Ex. B at p. 205)

109.    Even as of May 9, 2012, about three (3) years after Plaintiff's termination, WBAI

was late in paying its rent.  (Id.).

110.    Williams, as the CFO, has no idea as to how much rent WBAI was in arrear

around 2009 despite stating that late rent payment was one of the reasons to terminate

Plaintiff.  (Boyd Aff. Ex. B at pp. 205-06).

111.    Despite the fact that Williams claimed that she made the decision to suspend and

terminate Plaintiff, she played no part in responding to Plaintiff's Interrogatories to

Pacifica, where there were questions that are relevant to her and Plaintiff's termination.

(Boyd Aff. Ex. B at pp. 36-38; See Boyd Aff. Ex. Q at pp. 5, 17).

112.    The person who signed and prepared Pacifica's Responses to Plaintiff's

Interrogatories was Engelhardt.  (Id.).

113.    During Williams' deposition, it was the first time that she ever saw Pacifica's

Responses to Plaintiff's Interrogatories. (Boyd Aff. Ex. B at pp. 36-38).

**Defendant Brown**

114.    Defendant Brown is Caucasian.  (Boyd Aff. Ex. L at P0046).

115.     Brown does not like Plaintiff, who is African-American.  (Id. at P0109; Pl. Amended Compl. ¶8).

116.     Defendant Brown has been a member of the WBAI board since around 2004. (Boyd Aff. Ex. H at p. 51).

117.     As a member of the WBAI board, Brown has the power to, among other things, "screen and select a pool of candidates for the position of station Program Director," "prepare an annual written evaluation of the station's Program Director," and "assist in station fundraising activities." (Boyd Aff. Ex. C at p. 17).

118.     Brown produced an insurance policy as a part of his FRCP 26 Initial Disclosure which states that Pacifica indemnifies his actions.  (Boyd Aff. Ex. H at pp. 207-09).

119.     Brown wanted Plaintiff to be fired.  (Id. at p. 218).

120.     Brown is much more knowledgeable than Williams about the specific numbers and listenership data at WBAI and the public radio industry, even though Williams was the CFO, Interim General Manager, and allegedly the person who decided to fire Plaintiff.  (Id. at pp. 224-25).

121.     After Plaintiff's termination, Brown was quoted in the New York Daily News supporting the decision.  (Boyd Aff. Ex. L at P0655-P0658).

122.     On or around June 11, 2009 Brown appeared on television (the "Television Interview"), on behalf of WBAI along with Williams for about an hour to talk about the state of WBAI and Plaintiff's termination.  (See Boyd Aff. Ex. O).

123.     Brown has in the past nominated candidates to be a part of the national board. (Boyd Aff. Ex. H at p. 99; Boyd Aff. Ex. L at P0046-P0050).

124.     Brown has also suggested nominees.  (Boyd Aff. Ex. H at p.99).

125.     Brown has sent emails to a listsev that reached a large number of listeners and members to solicit nomination petitions.  (Id. at pp. 99, 123-24; Boyd Aff. Ex. L at P0046-P0050).

126.     The nomination petitions were sent to Brown's home. (Boyd Aff. Ex. L at p. 99).

127.     The board of directors at WBAI is generally divided by two factions.  (Boyd Aff. Ex. D at pp. 54-55).

128.     The factions are the Alliance for Community Elections ("ACE") and the Justice and Unity Caucus ("JUC").  (Id.).

129.     Brown is a member the ACE faction.  (See Boyd Aff. Ex. G).

130.     Sometime after Plaintiff's termination, ACE sent a flyer to WBAI members to, in part, vote for candidates for its board.  (Id.).

131.     Of the eleven candidates listed, Steve Brown, Jamie Ross, Carolyn Birden, Jennifer Jager, Seth Goldberg, Andrea Katz, Ken Laufer, Teresa Palmer, David Combs, Jeff Peress, and Matthew Reiss, are all based upon information and knowledge Caucasians. (Boyd Aff. Ex. I at ¶4).

132.     Not all of the people pictured in the ACE flyer are necessary supporters of the ACE faction.  (Id. at ¶5).

133.     Brown has sent numerous emails opposing JUC candidates.  (Boyd Aff. Ex. H at p. 121).

134.     Brown sends more emails than any other board members. (Boyd Aff. Ex. H at p. 109).

135.     Brown's emails were received by thousands of recipients.  (Boyd Aff. Ex. H at pp. 123-24).

136.    In an email, with a subject line of "Bernard White froths at the mouth in WBAI's hallway" sent by Brown on or about March 13, 2006, Brown wrote in relevant part "I was told that Bernard's [White] behavior was **aped** by Erroll Maitland."  (Emphasis added) (Boyd Aff. Ex. E at PAC000000108).

137.    In an email sent by Brown on or about March 14, 2006, Brown stated to a Steffie Brooks, "you should have been at her side whack Bernard [White] with a baseball bat." (Boyd Aff. Ex. H at pp. 133-138; Boyd Aff. Ex. E at PAC109).

138.    Brown has written that he "can understand the frustration of Palestinian suicide bombers."  (Boyd Aff. Ex. K at SB000199).

139.    On or about September 4, 2004, Brown sent an email to listeners and board member with the subject line of "Stepping up the hate campaign at WBAI."  (Boyd Aff. Ex. H at p. 145; (Boyd Aff. Ex. K at SB196).

140.    In this email, he purposely used the word "nigger" (the "N-Word") in relation to a black woman.  (Boyd Aff. Ex. H at p. 145; (Boyd Aff. Ex. K at SB000197).

141.    Brown does not think that the use of the N-Word is offensive.  (Boyd Aff. Ex. H at  pp.145-46).

142.    Brown does not think that the N-Word would be objectionable to African Americans.  (Id. at p.146).

143.    Brown does not think it was necessary to censor the fully N-Word in his email. (Id. at pp. 152-53).

144.    Brown has no reservation or remorse of using the word N-Word.  (Id. at pp. 153, 190).

145.    Brown has published many documents against Plaintiff.  (Boyd Aff. Ex. K at SB000198).

146.    Brown encourages others to not to feel "White liberal guilt." (Id.)

147.    Brown opposed Plaintiff's effort to gain more black audience. (Boyd Aff. Ex. H at p. 160).

148.    Brown wanted fewer black centric programing in WBAI. (Id. at p.162).

149.    In an email dated on or around October 10, 2004, Brown expressed his opposition to radio programs that featured Cornell West, Time Wise, Joyce Leary, June Jordan, and Ivan Van Sertima.  (Boyd Aff. Ex. K at SB000170).

150.    In the same email, Brown expressed his opposition to programs called "Race & Media Forum, Say it Loud, Voices of the Civil Rights Movement."  (Id.).

151.    Alex Feinberg ("Feinberg"), one of the people who reviewed a draft of Brown's email sent on or around October 10, 2004 recommended Brown to not send it to other people because the allegations **could not** be "substantiated."  (Boyd Aff. Ex. H at p.171; (Boyd Aff. Ex. K at SB000169).

152.    Feinberg is a WBAI board member.  (Boyd Aff. Ex. H at p.171).

153.    Brown called Plaintiff "a thug and a crook."  (Id. at p. 174).

154.    Brown admits that there are things that he thinks about Plaintiff that are libelous. (Id. at 174-75).

155.    Another Brown confidant by the name of Patty, also reviewed a draft of Brown's October 10, 2004 email.  (Id. at p. 177, Boyd Aff. Ex. K at SB000168).

156.    Patty was a former local and national board member.  (Boyd Aff. Ex. H at p. 177).

157.     Patty, also agreed with Feinberg that the email should not be sent. (Boyd Aff. Ex. K at SB000168).

158.     Patty states what Brown wrote was "speculation."  (Id.).

159.     As local board members, both Patty and Feinberg had the same fiduciary duty as Brown.  (Boyd Aff. Ex. H at p. 179).

160.     Even though both Patty and Feinberg thought it was unwise to send the October 10, 2004 email, Brown sent it anyway.  (Boyd Aff. Ex. H at pp. 179-80).

161.     On or around August 31, 2005, Brown sent an email, with the subject line "Why KGNU succeeds where WBAI cannot" to a Marty Durlin ("Durlin") (the "Durlin Email").  (Boyd Aff. Ex. K at SB000145).

162.     The Durlin Email was also forwarded to many other people, including WBAI listeners and supporters.  (Boyd Aff. Ex. H at p.193; (Boyd Aff. Ex. L at P0102).

163.     KGNU is a radio station in or around Boulder, Colorado.  (Boyd Aff. Ex. H at p.186).

164.     Durlin was the manager at KGNU.  (Id.; Boyd Aff. Ex. L at P0102).

165.     Durlin was also a former board of director (and former chair) of Pacifica.  (Boyd Aff. Ex. L at P102).

166.     In the Durlin Email, Brown expressed admiration for the homogeneity of the Boulder, Colorado population, which was "[a]lmost totally white."  (Boyd Aff. Ex. H at p. 187; Boyd Aff. Ex. K at SB000145-SB000152).

167.     In particular, in the Durlin Email, Brown asked Durlin: "How much of the success of KGNU (not counting, of course, the part that your leadership and the efforts of your

staff and listeners have played) has been due to an almost total absence of the tensions, frictions, and politics of race?"  (Boyd Aff. Ex. K at SB000146).

168.     Brown went to comment how countries that are "racially homogenous" better than countries that are not.  (Boyd Aff. Ex. K at SB000146-SB000147).

169.     Brown then observed that since New York is a very diverse city, then "it is no surprise that WBAI which has always been a pressure cooker of racial mistrust, nastiness, violence."  (Boyd Aff. Ex. K at SB000147).

170.     Brown then proceeded to observe that because KGNU, like the Boulder, "has to be one of the least racially diverse places in America."  (Id.).

171.     Brown's imagery of Boulder, a place where the population was "88.33% White" and "just 1.22%" African Americans, "is that of a peaceful placed filled with cheerful sun-tanned White guys."  (Id.).

172.      Brown thinks that the absence of racial tension is "one of the most important reasons for KGNU's success and WBAI's failure."  (Id.).

173.     In the end of the Durlin Email, Brown wrote to Durlin "Congratulations on the many successes of KGNU.  You are an inspiration (and a chastisement) to us in New York." (Id. at SB000152).

174.     Brown has no regret in sending the Durlin Email.  (Boyd Aff. Ex. H at pp.194-95).

175.     The only regret that Brown has about the Durlin Email was Plaintiff's ability to use it as evidence.  (Id. at p.195)

176.     After Plaintiff's attorney, the undersigned, identified himself as Irish during Plaintiff's deposition, Brown shortly afterward stated the following "Self-hating Irishman, like self-hating Jews, you know."  (Id. at p. 196).

177.     On or about October 19, 2006, Brown posted a message on a WBAI related message board under a thread titled "What percentage of this slate is white?" ("October 19, 2006 post").  (Boyd Aff. Ex. P).

178.     The October 19, 2006 post was related to a WBAI board election.  (Id.).

179.     In the October 19, 2006 post, Brown wrote in relevant part "Er, excuse me, Sir, would you mind dropping your pants so I can see if you are circumcised?", "you, Ms, is your favorite food **watermelon**…?", "you, Sir or Madam (hmmmm, I can't tell which), is that a dress you're wearing or do you just come from Scotland." (Id. at p. 2).

180.     Brown finds these writings to be "pretty funny."  (Boyd Aff. Ex. H at p. 201).

181.     Brown described the JUC which Plaintiff a part of, as "imbeciles" and the "Justice & Unity Color Correctness [sic] Police."  (Boyd Aff. Ex. P at p. 2).

182.     Lastly, in the October 19, 2006 Brown asks people to vote for the following people: Brown himself, Carolyn Birden, Mitch Cohen, Alex Steinberg, Patricia Logan, Andrea Fishman, and Paul De Rienzo, all of whom are Caucasian.  (Id.; Boyd Aff. Ex. I at ¶6).

183.     Brown would not change anything he has written.  (Boyd Aff. Ex. H at pp. 216-17).

184.     On or about July 6, 2004 Brown authored (or commissioned the drafting of) a report titled "Gary Null's Fundraising History at WBAI and Pacifica" (the "Report"). (Boyd Aff. Ex. M at p. 2).

26

185.     The Report was signed by Brown.  (Id.).

186.     Although the title of the Report seemed to indicate that it was about defending Gary Null's ("Null") performance at WBAI and Pacifica, the report itself and its supporting documents, clearly show indicate an animus against Plaintiff. (Id. at pp. 3-11).

187.     Null is Caucasian.  (Boyd Aff. I at ¶7).

188.     Defendant Brown celebrated the Plaintiff's termination.  (Boyd Aff. Ex. L at P0049).


**Williams' relationship with Defendant Stephen Brown**

189.     Williams said that she does no know Brown very well and only met him a couple of times in national board meetings. (Boyd Aff. Ex. B at pp.137-140).

190.     Williams claims that she did not make the decision to suspend and fire Plaintiff in collaboration with Brown.  (Id. at pp. 14, 18).

191.     Yet, Williams, appeared on Television Interview with Brown, to discuss, among other things, Plaintiff's termination.  (See Boyd Aff. Ex. O).

192.     During the Television Interview, both Williams and Brown were speaking in corroboration in regard to their opinions about Plaintiff, WBAI, and Pacifica.  (Id.).

193.     Both Brown and Williams were talking to each other in a manner akin to longtime friends.  (Id.).

Dated: New York, New York
         September 24, 2012

                                        THE BOYD LAW GROUP, PLLC

                                        /s/ Patrick J. Boyd
                                        Patrick J. Boyd, Esq. (PB0921)
                                        370 Lexington Avenue, Suite 1705
                                        New York, NY 10017
                                        Tel. 212.867.3675
                                        Fax. 212.867.5765
                                        pboyd@theboydlawgroup.com
                                        *Attorneys for Plaintiff*