UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| USDC SDNY | |
| DOCUMENT | |
| ELECTRONICALLY FILED | |
| DOC #: _____ | |
| DATE FILED: September 19, 2013 | |

BERNARD WHITE,

                Plaintiff,

     - against -

PACIFICA FOUNDATION and
STEPHEN M. BROWN,

             Defendants.

**MEMORANDUM
OPINION & ORDER**

11 Civ. 2192 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

          Plaintiff Bernard White alleges that Defendants Pacifica Foundation – his former

employer – and Stephen M. Brown – a board member for a local radio station owned by Pacifica

– discriminated against him because of his race, and then retaliated against him for complaining

about the discrimination, in violation of 42 U.S.C. §§ 1981 et seq. ("Section 1981"); the New

York State Human Rights Law, N.Y. Exec. L. § 290 et seq. ("NYSHRL"); and the New York

City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. ("NYCHRL").  (Am. Cmplt.

(Dkt. No. 19))  Defendants have moved for summary judgment on all of White's claims.  (Dkt.

Nos. 34, 45)  For the reasons stated below, Defendants' motions will be granted.

**BACKGROUND**[1]

## I.    STRUCTURE OF PACIFICA AND WBAI

          Defendant Pacifica is a California foundation that operates a network of not-for-

---

[1]  Edward Manfredonia has submitted six sworn statements to this Court in connection with this case.  Manfredonia is not a party to this action, and the parties did not submit these statements. Accordingly, they are not part of the record concerning Defendants' motions for summary judgment and have not been considered by the Court.

profit radio stations in the United States.  (Pacifica R. 56.1 Stmt. ¶ 1)[2]  The governing body of

Pacifica is the Pacifica National Board.  (Pacifica R. 56.1 Stmt. ¶ 3)

WBAI 99.5 FM is a radio station in New York City that is wholly owned by

Pacifica.  (Pacifica R. 56.1 Stmt. ¶ 5; Pltf. R. 56.1 Stmt. ¶ 2)  WBAI offers news and educational

programming and earns at least 80% of its revenue through on-air fundraising and donor

campaigns.  (See Boyd Aff., Ex. C at PAC7; Pacifica R. 56.1 Stmt. ¶ 20)  WBAI has a Local

Station Board ("LSB") comprised of 24 members.  (Pacifica R. 56.1 Stmt. ¶ 7)  Plaintiff became

WBAI's Program Director in 2000 and, except for a one-year period around 2001, held that

position until his termination in May 2009.  (Pacifica R. 56.1 Stmt. ¶¶ 15, 52; Kaye Decl., Ex. 7

(White Dep. Tr.) at 16:2-17:3)

Under Pacifica's bylaws, the WBAI LSB has the power to "screen and select a

pool of candidates for the position of station Program Director, from which pool of approved

---

[2]  This Court relies on facts drawn from a party's Local Rule 56.1 statement where the opposing
party has admitted those facts or has not controverted them with citations to admissible evidence.
See Giannullo v. City of N.Y., 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails
to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be
deemed admitted.").  Where a non-moving party disagrees with the moving party's
characterization of the cited evidence, and has presented an evidentiary basis for doing so, the
Court relies on the non-moving party's characterization of the evidence.  See Cifra v. Gen. Elec.
Co., 252 F.3d 205, 216 (2d Cir. 2001) (court must draw all rational factual inferences in non-
movant's favor in deciding summary judgment motion).  "Pacifica R. 56.1 Stmt." refers to
Defendant Pacifica Foundation's Local Rule 56.1 Statement of Undisputed Facts, dated July 9,
2012.  (Dkt. No. 36)  "Pltf. Pacifica R. 56.1 Resp." refers to Plaintiff's response to Pacifica's
Rule 56.1 statement.  (Dkt. No. 54)  "Brown R. 56.1 Stmt." refers to Defendant Stephen M.
Brown's Statement of Undisputed Material Facts, dated July 9, 2012.  (Dkt. No. 47)   "Pltf.
Brown R. 56.1 Resp." refers to Plaintiff's response to Brown's Rule 56.1 statement.  (Dkt. No.
56)  "Pltf. R. 56.1 Stmt." refers to Plaintiff's Statement of Additional Undisputed Facts, dated
Sept. 24, 2012, identical versions of which were filed in response to both Pacifica and Brown's
Rule 56.1 statements.  (Dkt. Nos. 54, 56)  "Pacifica R. 56.1 Reply" refers to the portions of
Pacifica's Rule 56.1 reply statement, dated Nov. 15, 2012, responding to Plaintiff's Statement of
Additional Undisputed Facts.  (Dkt. No. 41)  "Brown R. 56.1 Reply" refers to Brown's Rule 56.1
reply statement, dated Nov. 15, 2012, responding to Plaintiff's Statement of Additional
Undisputed Facts.  (Dkt. No. 49)

candidates the station's General Manager shall hire the station's Program Director."  (Boyd Aff.,

Ex. C at PAC23)  The LSB is also responsible for "prepar[ing] an annual written evaluation of

the station's Program Director."  (Id.)  The LSB established a Management Evaluation

Committee to carry out this task.  (Boyd Aff., Ex. A at P54-55)  Among other responsibilities,

the LSB "assist[s] in station fundraising activities."  (Boyd Aff., Ex. C at PAC23)

## II.   BROWN'S POSITION AND EMAILS

Brown, a Caucasian man, is a member of the WBAI LSB.  (Pacifica R. 56.1 Stmt.

¶ 8; Pltf. R. 56.1 Stmt. ¶ 114)  Pacifica has never paid Brown any wages, benefits, dividends, or

compensation of any kind, and Brown has never had an ownership interest in Pacifica.  (Brown

R. 56.1 Stmt. ¶¶ 73, 77, 79)  As a member of WBAI's board, Brown does not have the authority

to make personnel decisions or terminate employees on behalf of Pacifica, or to otherwise affect

the terms and conditions of employment of Pacifica employees.  (Brown R. 56.1 Stmt. ¶ 74;

Kaye Decl., Ex. 5 (Williams Dep. Tr.) at 12:20-13:5)

At issue in this litigation are certain emails sent by Brown – between 2004 and

2006 – some of which reached a large number of WBAI listeners and members via a listserv.

(Pltf. R. 56.1 Stmt. ¶¶ 125, 133, 135)  These emails include the following:

- On September 4, 2004, Brown sent an email to eleven recipients with the subject line "Stepping up the hate campaign at WBAI."  At the beginning of the email, Brown states:  "You ought to be aware that the race-baiting campaign launched against us will be stepped up.  Last night Bernard White held a secret strategy session . . . with several of his allies."  (Pltf. R. 56.1 Stmt. ¶ 139; Boyd Aff., Ex. K at SB196-202).

- On October 10, 2004, Brown sent an email to six recipients with the subject line "How Bernard White skewed and screwed the WBAI electorate."  In the email, Brown states that Plaintiff "arranged for a disproportionately large number of premiums offered during every fundraiser in 2003 to be 'racially oriented' and – even more specifically – African-American oriented."  (Pltf. R. 56.1 Stmt. ¶¶ 149-50; Boyd Aff., Ex. K at SB170-71)

- On August 31, 2005, Brown sent an email to an unknown number of recipients stating that a radio station in Boulder, Colorado succeeds because the population of Boulder is "[a]lmost entirely white."  The email further states that "it is no surprise that WBAI . . . has always been a pressure cooker of racial mistrust, nastiness, [and] violence." (Pltf. R. 56.1 Stmt. ¶¶ 161-73; Boyd Aff., Ex. K at SB145-52)

- On March 13, 2006, Brown posted a message to a message board with the subject line "Bernard White froths at the mouth in WBAI's hallway."  The post states that White was "bellowing crude racists insults clearly directed at [a female employee]" and that White and Maitland "instituted a reign of terror in which staff members have literally been beaten up on the premises."  (Pltf. R. 56.1 Stmt. ¶ 136; Boyd Aff. Ex. E at PAC108-09)

- On March 14, 2006, Brown posted a message to a message board with the subject line "Shame on you and (many of) the WBAI staff!"  The message states that White was "terrorizing" another employee.  (Pltf. R. 56.1 Stmt. ¶ 137; Boyd Aff. Ex. E at PAC109)

- On October 19, 2006, Brown contributed to a message board thread titled "What percentage of this slate is white?"  (Pltf. R. 56.1 Stmt. ¶ 177-79, 181-82; Boyd Aff., Ex. P)

Plaintiff asserts that Brown's "negative" emails from the 2004-06 time period "had an influence in setting the stage for [his] termination" in May 2009.  (Brown R. 56.1 Stmt. ¶ 88; Kaye Decl., Ex. 7 (White Dep. Tr.) at 33:9-10, 17)  Although Plaintiff asserts that Brown continued to send similar emails attacking Plaintiff through 2009 (Pltf. R. 56.1 Stmt. ¶ 40), there is no evidence of similar emails or message board posts after October 19, 2006.  (See Pltf. Brown R. 56.1 Resp. ¶ 88; Brown R. 56.1 Resp. ¶ 40)

Brown testified that he thought White was a terrible Program Director.  (Brown R. 56.1 Resp. ¶ 115 (citing Brown Dep. Tr. 131:25-132:2, 136:15-23)  He also opposed Plaintiff's effort to attract a larger African-American audience because "the station's purpose was not to focus on one particular . . . minority."  Brown believed that Plaintiff's focus on an African-American audience "was not only morally wrong, it was irresponsible, in terms of management of the station. . . ."  (Pltf. R. 56.1 Stmt. ¶ 147; Boyd Aff., Ex. H (Brown Dep. Tr. at

4

162:7-12)  Brown wanted White to be fired and celebrated when his employment was terminated in 2009.  (Pltf. Brown R. 56.1 Resp. ¶¶ 119, 188)

### III.   PLAINTIFF'S DUTIES AS PROGRAM DIRECTOR AND WBAI'S FUNDRAISING AND LISTENERSHIP DECLINE

Plaintiff, an African-American man, was hired by Pacifica in 1992 as a host of a WBAI morning program.  (Pacifica R. 56.1 Stmt. ¶ 14)  In 1999, Plaintiff became WBAI's Acting Program Director, and in 2000, he assumed that position on a full-time basis.[3]  (Pacifica R. 56.1 Stmt. ¶ 15)  As Program Director, an "essential" part of Plaintiff's responsibilities was to organize fundraising drives.  (Pacifica R. 56.1 Stmt. ¶¶ 17-18 (quoting Kaye Decl., Ex. 8))  While Plaintiff was Program Director, WBAI often had to extend its fundraising drives to reach target goals, and its financial condition steadily worsened.  (Pacifica R. 56.1 Stmt. ¶¶ 22, 24)  WBAI's listener donations decreased in each of the four fiscal years preceding Plaintiff's termination, but increased in each of the two fiscal years following his termination.  (Pacifica R. 56.1 Stmt. ¶¶ 28-34; Pacifica R. 56.1 Reply ¶¶ 28-34)  During the latter part of Plaintiff's tenure as Program Director, there was a decline in both the station's listenership and revenue.  (Pacifica R. 56.1 Stmt. ¶ 35 (citing Pltf. Dep. Tr. 44:24-25, 45:2-8))

LaVarn Williams, Pacifica's Chief Financial Officer, testified that a committee was formed in or around 2007 to study the decrease in WBAI's listenership, and that both she and Plaintiff were part of this committee.  (Pltf. R. 56.1 Stmt. ¶¶ 4, 71-72 (citing Williams Dep. Tr. 96-97)  Plaintiff denies that he was a member of this committee or that he was even aware of its existence.  (Pltf. R. 56.1 Stmt. ¶ 73)

---

[3]  Plaintiff's employment was terminated in 2000 as a result of "a lawsuit brought by some listeners, as well as some staff people, against the board that was existing at that time."  He was re-hired as Program Director in 2001.  (Kaye Decl., Ex. 7 (White Dep. Tr.) at 16:2-17:3))

## IV.   PLAINTIFF'S COMPLAINTS, SUSPENSION, AND TERMINATION

Plaintiff testified that, as early as 2003, he notified the Pacifica National Board and the WBAI Local Station Board of Brown's allegedly discriminatory emails.  (Pltf. R. 56.1 Stmt. ¶ 31)  Plaintiff also states that he discussed Brown's emails with Pacifica's then-Executive Director, Dan Kaufman in about 2003 (Pltf. R. 56.1 Stmt. ¶ 32); and with Greg Guma, Pacifica's then-Executive Director, in about 2006.  (Pltf. R. 56.1 Stmt. ¶ 33)

On September 27, 2007, Plaintiff emailed a written complaint to Pacifica National Board Chairman, David Edelson, asserting that Brown "has engaged in a long running, concerted campaign of slander and libel" against Plaintiff that "made the performance of [his] job more difficult."  Plaintiff complained that Brown's "defamation is saturated with racial invective such that [his] well-being is affected."  (Kaye Decl., Ex. 8 at PAC198-99; see also Pacifica R. 56.1 Stmt. ¶¶ 58-59)  About a week after Plaintiff emailed his complaint, he was contacted by Pacifica's counsel, Dan Siegel, who told Plaintiff that he was conducting an investigation and asked for more information about White's claims.  (Pacifica R. 56.1 Stmt. ¶¶ 63-64)  Plaintiff provided Siegel with copies of emails.  (Pacifica R. 56.1 Stmt. ¶ 65)  The record contains no further information about Siegel's investigation.  Plaintiff admits that he never followed up with Siegel about the investigation.  (Pacifica R. 56.1 Stmt. ¶ 66)

On April 17, 2009, Grace Aaron, Pacifica's Executive Director, sent an email to Anthony Riddle, WBAI's General Manager, stating:

> You must ensure that Bernard White, WBAI Program Director, who has been on medical leave, does not return to the job of Program Director and that he is not employed at WBAI in any capacity.  He must have no influence over the programming at the station.  His past performance as Program Director has been poor.  He has not been carrying out the duties and responsibilities of his job as outlined in the Program Director Job Description.  Listenership has been declining steadily for a number of years under his stewardship . . . .

6

(Pacifica R. 56.1 Stmt. ¶ 39; Kaye Decl., Ex. 10)  At about this time, Aaron, Ahmad Anderson –

Pacifica's Human Resources Manager – and Pacifica CFO Williams discussed terminating

Plaintiff for performance reasons.  (Pltf. R. 56.1 Stmt. ¶ 75)  Williams traveled to New York City

in mid-April 2009 and spent two weeks assessing WBAI's poor financial condition.  (Pacifica R.

56.1 Stmt. ¶ 36; Pltf. R. 56.1 Stmt. ¶¶ 76, 81)

WBAI General Manager Riddle suspended White for three days in early May

2009 after Plaintiff referred to Brown as "fecal matter" on the air.  (Pacifica R. 56.1 Stmt. ¶¶ 43-

44; Pltf. R. 56.1 Stmt. ¶ 43; Boyd Aff., Ex. E at PAC197)  During the evening of the first day of

White's suspension – May 4, 2009 – he re-sent his September 2007 complaint to the Pacifica

National Board.  (Pacifica R. 56.1 Stmt. ¶ 67; Kaye Decl., Ex. 8 at PAC197-99)

On May 8, 2009, Plaintiff was suspended again, this time for a ten-day period.

(Pacifica R. 56.1 Stmt. ¶ 42)  After Williams completed her two-week assessment, she, Aaron,

and Anderson decided to suspend Plaintiff again "based on the fact that WBAI radio had a

decrease in revenue [and] the fund drives were not successful. . . ."  (Kaye Decl., Ex. 5 (Williams

Dep. Tr.) at 15:3-5; see also Pacifica R. 56.1 Stmt. ¶ 40)  Williams and Anderson prepared

Plaintiff's suspension letter, which was signed and delivered by Williams.  (Pacifica R. 56.1

Stmt. ¶ 41; Pltf. R. 56.1 Stmt. ¶¶ 83-84; Kaye Decl., Ex. 11)  The letter states that

> disciplinary action is being taken based on . . . [Plaintiff's] fail[ure] to structure
> successful fundraising drives at the station, as shown by the substantial decrease
> in listener supported revenues at WBAI . . . [and Plaintiff's] fail[ure] to establish
> programming that increases and retains [WBAI] listeners, as shown by the
> significant loss in the number of WBAI's listeners.

(Kaye Decl., Ex. 11)  Brown did not take part in any meetings regarding Plaintiff's suspension,

did not participate in drafting Plaintiff's suspension letter, and was not asked to review the

suspension letter before it was given to Plaintiff.  (Kaye Decl., Ex. 5 (Williams Dep. Tr.) at 15:16-17:10; see also Pacifica R. 56.1 Stmt. ¶ 47)

On May 11, 2009, Plaintiff wrote an email to Williams, Aaron, Anderson, and others rebutting the grounds for his suspension.  (Pltf. R. 56.1 Stmt. ¶ 46; Kaye Decl., Ex. 13) The email does not mention race, discrimination, or Brown.  (Brown R. 56.1 Stmt. ¶ 85; Kaye Decl., Ex. 13)

While Plaintiff was serving his second suspension, Williams and Anderson – both of whom are African-American (Pacifica R. 56.1 Stmt. ¶¶ 4, 40) – decided to terminate Plaintiff's employment.  (Pacifica R. 56.1 Stmt. ¶ 48)  Brown played no role in the decision to terminate Plaintiff.  (Kaye Decl., Ex. 5 (Williams Dep. Tr.) at 18:5-8)  Williams testified that Plaintiff was terminated (1) because of "the issues with the fund drives and the listenership going down," and (2) because other employees "confided" in Williams during her on-site assessment that Plaintiff was "abusive" and "presented a negative environment with his presence."  (Id. at 18:11-19:6)  Some of the individuals who "confided" in Williams are African-American.  (Id. at 19:7-20-6; see also Pacifica R. 56.1 Stmt. ¶ 49)

Plaintiff's employment was terminated, effective May 18, 2009, in a letter drafted by Williams and Anderson and signed by Williams.  (Pacifica R. 56.1 Stmt. ¶ 52; Pltf. R. 56.1 Stmt. ¶ 83; Kaye Decl., Ex. 5 (Williams Dep. Tr.) at 20:10-16)  Brown did not participate in drafting Plaintiff's termination letter and did not review the letter before it was given to Plaintiff. (Kaye Decl., Ex. 5 (Williams Dep. Tr.) at 20:17-22)

After Plaintiff was terminated, Tony Bates, who is African-American, assumed the role of Interim Program Director at WBAI.  (Pacifica R. 56.1 Stmt. ¶ 54)

## V.       THE AMENDED COMPLAINT

In his Amended Complaint, Plaintiff alleges that Pacifica and Brown harassed and terminated him on the basis of his race in violation of Section 1981.  (Am. Cmplt. (Dkt. No. 19) ¶¶ 52-57)  He further alleges that Defendants discriminated against him by denying him equal terms and conditions of employment and terminating him on the basis of his race in violation of the NYSHRL and the NYCHRL.  (Id. ¶¶ 58-62, 70-75)  Plaintiff also claims that Defendants retaliated against him after he complained about the discrimination, by terminating his employment.  (Id. ¶¶ 63-69, 76-82)  Finally, Plaintiff alleges that Brown "caused, aided, abetted, incited, compelled, and/or coerced" the discrimination and retaliation against Plaintiff, in violation of the NYSHRL and the NYCHRL.  (Id. ¶¶ 60, 65, 72, 78)

On July 9, 2012, Pacifica and Brown each filed motions for summary judgment. (Dkt. Nos. 34-39, 45-48)  On September 24, 2012, Plaintiff filed oppositions to both motions. (Dkt. Nos. 52-57)  On November 15, 2012, Pacifica and Brown each filed replies.  (Dkt. Nos. 40-44, 49-51)

## DISCUSSION

## I.       SUMMARY JUDGMENT STANDARD

Summary judgment is warranted where the moving party shows that "there is no genuine issue as to any material fact" and that it "is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. Cnty. of Nassau, 524 F.3d 160, 163 (2d Cir. 2008).  "[W]here the nonmoving party will bear the burden of proof at trial, Rule 56 permits the moving party to point to an absence of

evidence to support an essential element of the nonmoving party's claim." Bay v. Times Mirror Magazines, Inc., 936 F.2d 112, 116 (2d Cir. 1991).

In deciding a summary judgment motion, the Court "resolve[s] all ambiguities, and credit[s] all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001). "Mere conclusory statements, conjecture or speculation" by the plaintiff will not defeat a summary judgment motion. Gross v. Nat'l Broad. Co., Inc., 232 F. Supp. 2d 58, 67 (S.D.N.Y. 2002); see also Holcomb v. Iona Coll., 521 F.3d 130, 137 (2d Cir. 2008) ("Even in the discrimination context . . . a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment."). Instead, the plaintiff must offer "concrete particulars." Bickerstaff v. Vassar Coll., 196 F.3d 435, 451-52 (2d Cir. 1999) (disregarding plaintiff's Rule 56(e) affidavit because it lacked "concrete particulars"); Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985) ("To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases.").

District courts must be cautious in granting summary judgment in employment discrimination cases, because "the ultimate issue to be resolved in such cases is the employer's intent, an issue not particularly suited to summary adjudication." Eastmer v. Williamsville Cent. Sch. Dist., 977 F. Supp. 207, 212 (W.D.N.Y. 1997) (citing Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1224 (2d Cir. 1994)). Nevertheless, "[i]t is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases," and that "the salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to . . . other areas of litigation." Abdu-Brisson

v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001) (internal quotation omitted).  As in any

other case, "an employment discrimination plaintiff faced with a properly supported summary

judgment motion must 'do more than simply show that there is some metaphysical doubt as to

the material facts.' . . . [He] must come forth with evidence sufficient to allow a reasonable jury

to find in [his] favor."  Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001) (quoting

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

## II.     BROWN IS ENTITLED TO SUMMARY JUDGMENT ON ALL CLAIMS

### A.     Plaintiff Has Not Established Brown's Personal Involvement Under Section 1981

Under Section 1981, "[a]ll persons within the jurisdiction of the United States

shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens."

42 U.S.C. § 1981(a).  "This section . . . outlaws discrimination with respect to the enjoyment of

benefits, privileges, terms, and conditions of a contractual relationship, such as employment

. . . ."  Patterson v. Cnty. of Oneida, N.Y., 375 F.3d 206, 224 (2d Cir. 2004).  Here, Plaintiff

alleges that he was "harassed and then terminated based upon his race by Defendants in violation

of Section 1981."  (Am. Cmplt. ¶ 54)

"In order to make out a claim for individual liability under [Section] 1981, 'a

plaintiff must demonstrate some affirmative link to causally connect the actor with the

discriminatory action. . . . [P]ersonal liability under [S]ection 1981 must be predicated on the

actor's personal involvement.'"  Patterson, 375 F.3d at 229 (quoting Whidbee v. Garzarelli Food

Specialties, Inc., 223 F.3d 62, 75 (2000).  "[A] third party may be liable under § 1981 if that

party 'intentionally interferes, on the basis of race, with another's right to make and enforce

contracts, regardless of whether the employer or anyone else may also be liable.'"  Olumuyiwa v.

Harvard Prot. Servs., Inc., No. 98 Civ. 5110 (JG), 2000 WL 620202, at *5 (E.D.N.Y. May 12, 2000) (quoting Coleman v. Dow Chem. Co., 747 F. Supp. 146, 155 (D. Conn. 1990)).

   Here, the undisputed evidence shows that Brown was not personally involved in Plaintiff's suspension or termination.  Williams testified that she, Aaron, and Anderson were responsible for the decision suspend and terminate Plaintiff, and that Brown was not involved in any way with these decisions.  (Kaye Decl., Ex. 5 (Williams Dep. Tr.) at 15:3-5, 15:16-17:14; see also Pacifica R. 56.1 Stmt. ¶¶ 41, 47; Pltf. R. 56.1 Stmt. ¶¶ 83-84))  While Plaintiff speculates that someone else was behind the decision to suspend and terminate him (see Pltf. Brown Opp. Br. 20-21), he has not offered any evidence to show that Brown played a role in that decision.

   Plaintiff argues that "[b]ased on Brown's duty, power and abilities [as a member of the WBAI LSB], he had the power to affect Plaintiff's employment and to evaluate Plaintiff's performance."  (Pltf. Brown Opp. Br. 18)  In support of this argument, Plaintiff contends that, under the Pacifica bylaws, Brown has the power to "screen and select a pool of candidates for the position of station Program Director," "prepare an annual written evaluation of the station's Program Director" and nominate candidates for the Pacifica National Board, which had the power to fire the Program Director.  (Id. (citing Boyd Aff., Ex. C at 17))

   As an initial matter, Plaintiff's argument is besides the point, because the undisputed evidence is that Williams, Aaron, and Anderson were responsible for White's suspension and termination, and not WBAI's local board.  Even if there was evidence that the WBAI LSB was involved in these decisions – an there is no such evidence – Brown's mere membership on the 24-person board would provide not basis for holding him liable.  Finally, the record indicates that the LSB created a Management Evaluation Committee to conduct the

annual evaluation of the Program Director (Boyd Aff., Ex. A at P54-55), and there is no evidence

that Brown was a part of this committee.  See Picotte v. Cmty. Child Care Ctr. of Third Ward,

Inc., 901 F. Supp. 588, 594 (W.D.N.Y. 1995) (individual board members not liable under Title

VII where plaintiff "answered only to the Board as a whole," "[a]cting individually, neither

[board member] had any control over [plaintiff's] immediate job responsibilities or her job

security" and "[n]either professed to be acting or speaking on behalf of the Board"); DeWald v.

Amsterdam Hous. Auth., 823 F. Supp. 94, 103 (N.D.N.Y. 1993) ("Case authority

overwhelmingly supports the conclusion that voting members of a board cannot be held liable for

the corporate entity's resulting acts. . . . Their votes alone are not enough to hold these board

members liable as "employers" within the meaning of Title VII.  Since none of the individually-

named defendants had independent authority to terminate plaintiff's employment, none can be

held liable under Title VII as an employer.").

        While Plaintiff argues that Brown hated him and wanted him to be fired (Pltf.

Pacifica Opp. Br. 20; Pltf. R. 56.1 Stmt. ¶¶ 119, 188), and that Brown sent "negative" emails to

"sabotage" him and set the stage for his termination (Pltf. Brown Opp. Br. 18, 20; Brown R. 56.1

Stmt. ¶ 88; Kaye Decl., Ex. 7 (White Dep. Tr.) at 33:9-10, 17), there is no evidence that the

emails – sent between September 2004 and October 2006 – played any role in the decision to

terminate Plaintiff in May 2009.  Indeed, Williams testified that Brown played no role in the

decision to terminate Plaintiff.  (Kaye Decl., Ex. 5 (Williams Dep. Tr.) at 18:5-8, 20:17-22;

Pacifica R. 56.1 Stmt. ¶ 48)  Accordingly, while the emails and postings support an inference

that Brown disliked Plaintiff, they do not show that Brown was involved in terminating

Plaintiff's employment.  See Isaacs v. City of N.Y., No. 04 Civ. 5108 (PAC), 2005 WL 3466051,

at *9 (S.D.N.Y. Dec. 16, 2005) (granting individual defendant summary judgment where

plaintiff alleged defendant made racially-charged comments, but "no reasonable fact finder would conclude that [defendant] caused [plaintiff's termination"); <u>Khan v. Abercrombie & Fitch, Inc.</u>, No. 01 Civ. 6163 (WHP), 2003 WL 22149527, at *7 (S.D.N.Y. Sept. 17, 2003) (granting individual defendant summary judgment because discriminatory comments made by defendant two years before plaintiff's termination were "far too remote to establish the requisite causal connection," and comments did "not raise an inference of discrimination" because defendant "played no role in [employer's] decision to terminate [plaintiff]").

In sum, even when the record is viewed in a light most favorable to Plaintiff, he has not demonstrated a material issue of fact as to whether Brown was personally involved in his suspension or termination.  Accordingly, Brown is entitled to summary judgment on Plaintiff's Section 1981 claim.

Plaintiff's NYSHRL and NYCHRL claims against Brown fail for the same reasons that his Section 1981 claim fails:  there is no evidence that Brown played any role in any adverse employment action taken against Plaintiff.  As discussed below, however, the NYSHRL and NYCHRL claims fail for additional independent reasons.

**B.**     **<u>Brown Was Not Plaintiff's Employer Under the NYSHRL</u>**

The NYSHRL makes it "an unlawful discriminatory practice . . . [f]or an employer . . . because of the . . . race . . . of any individual . . . to discharge from employment such individual, or to discriminate against such individual in . . .  conditions or privileges of employment."  N.Y. Exec. L. § 296(1)(a); (Am. Cmplt. ¶ 59).  The Amended Complaint further asserts that Brown violated the retaliation provision of the NYSHRL, under which it is "an unlawful discriminatory practice . . . [f]or any employer . . . to discharge, expel or otherwise discriminate against any person because he or she has opposed any practices forbidden under this

article or because he or she has filed a complaint, testified or assisted in any proceeding under this article." N.Y. Exec. L. § 296(1)(e); (Am. Cmplt. ¶ 64). The plain language of both provisions makes clear that they apply only to "an employer." N.Y. Exec. L. §§ 296(1)(a), (e).

Under the NYSHRL, "[a]n individual qualifies as an 'employer' when that individual has an ownership interest in the relevant organization or the 'power to do more than carry out personnel decisions made by others.'" Townsend v. Benjamin Enterprises, Inc., 679 F.3d 41, 57 (2d Cir. 2012) (quoting Patrowich v. Chem. Bank, 63 N.Y.2d 541, 542 (1984) (per curiam)). "To determine whether a defendant is an 'employer' within the meaning of the NYSHRL, the Court examines whether the alleged employer: (1) had the power to hire employees; (2) made the payment of salary or wages to the employee; (3) had the power of dismissal over the employee; and (4) had the power to control the employee's conduct." MacSweeney v. ING Life Ins. & Annuity Co., No. 11 Civ. 971 (VB), 2011 WL 4839086, at *6 (S.D.N.Y. Oct. 12, 2011) (citing, inter alia, Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459, 461 (2d Cir. 1998)). "The fourth factor is most important." Id.

Here, it is undisputed that Brown never had an ownership interest in Pacifica, and never received any wages, benefits, compensation, or dividends from Pacifica. (Brown R. 56.1 Stmt. ¶¶ 73, 77, 79) There is also undisputed evidence that Brown does not have the ability to make personnel decisions or terminate employees on behalf of Pacifica, nor the power to affect the terms and conditions of employment of Pacifica employees. (Brown R. 56.1 Stmt. ¶ 74; Kaye Decl., Ex. 5 (Williams Dep. Tr.) at 12:20-13:5)

Plaintiff argues, however, that "Brown has the authority to hire [WBAI's] Program Director[]." (Pltf. Brown Opp. Br. 19) There is no such evidence. The 24-member WBAI board – of which Brown is a member – has the power to screen candidates for Program

15

Director; from a pool selected by the board, the station's General Manager hires a Program

Director.  (Boyd Aff., Ex. C at PAC23)  Plaintiff also argues, however, that "Brown could also

set into motion the firing of Program Directors by (1) giving them bad evaluations, (2)

sabotag[ing] their fundraising ability by not assisting [them], and (3) nominating and

campaigning for people of his own choosing to be on the Pacifica board who can then fire the

Program Directors directly."  (Pltf. Brown Opp. Br. 19)  Again, the Pacifica bylaws grant the

WBAI LSB as a whole – not Brown individually – the power to conduct annual evaluations,

assist fundraising efforts, and nominate candidates for the Pacifica National Board.  (Boyd Aff.,

Ex. C at PAC22-23)  Any influence that Brown had over Plaintiff's employment as a member of

the LSB is not sufficient to establish that he was Plaintiff's employer for purposes of the

NYSHRL.  See Picotte , 901 F. Supp. at 594  (board members with no independent control over

plaintiff not liable under Title VII); DeWald, 823 F. Supp. at 102 (voting board members without

independent authority to terminate plaintiff's employment are not "employers" within meaning

of Title VII); Kaiser v. Raoul's Rest. Corp., 72 A.D.3d 539, 540 (1st Dep't 2010) (definition of

"employer" under NYSHRL "is not, in any event, broader than the definition of that term under

the relevant federal statutes"); Weir v. Holland & Knight, LLP, 34 Misc. 3d 1207(A), at *6 (Sup.

Ct. N.Y. Cty. 2011) (table disposition) (definition of "employer" under federal, state, and city

civil rights statutes is consistent).

        **C.**      **Brown Was Not Plaintiff's Employer, Nor an Employee**
                    **or Agent of Pacifica or WBAI, Under the NYCHRL**

        The Amended Complaint asserts that Brown violated the NYCHRL, which makes

it "an unlawful discriminatory practice . . . [f]or an employer or an employee or agent thereof,

because of the actual or perceived . . . race . . . of any person . . . to discharge from employment

such person or to discriminate against such person in . . . conditions or privileges of

employment." N.Y.C. Admin. Code § 8-107(1); (Am. Cmplt. ¶ 71). The Amended Complaint further asserts that Brown violated the NYCHRL's retaliation provision, which states that it is "an unlawful discriminatory practice for any person engaged in any activity to which [the NYCHRL's anti-discrimination] chapter applies to retaliate or discriminate in any manner against any person because such person has . . . filed a complaint [or participated in other enumerated protected activities]." N.Y.C. Admin. Code § 8-107(7); (Am. Cmplt. ¶ 77). These sections apply to employers and their employees and agents.

For the reasons stated above in connection with the NYSHRL, Brown cannot be held liable as an "employer." See Robins v. Max Mara, U.S.A., Inc., 923 F. Supp. 460, 471 (S.D.N.Y. 1996) ("courts generally treat the state and city Human Rights Laws as comparable"). Nor can Brown be held liable as an employee of Pacifica or WBAI.

Because the NYCHRL does not define "employee," the common law definition applies. See People v. King, 61 N.Y.2d 550, 554-55 (1984) ("[I]f a statute uses a word which has a definite and well-known meaning at common law, it will be construed with the aid of common-law definitions, unless it clearly appears that it was not so intended."). Under New York common law, an employee is "one who undertakes to achieve an agreed result and to accept the directions of his employer as to the manner in which the result shall be accomplished . . . . ." In re Morton, 284 N.Y. 167, 172 (1940). Thus, "[t]he existence of an employer-employee relationship is dependent upon the amount of control involved in respect to the manner in which the work is to be done." Cool v. Ross, 57 A.D. 2d 450, 451 (1977) (citing In re Morton). "Factors relevant to assessing control include whether the worker (1) worked at his own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4)

was on the employer's payroll and (5) was on a fixed schedule." <u>Bynog v. Cipriani Grp., Inc.</u>, 1 N.Y.3d 193, 198 (2003).

Here, it is undisputed that Pacifica never paid Brown wages, benefits, or compensation of any kind.  (Brown R. 56.1 Stmt. ¶ 73)  In addition, there is no evidence that Brown was prohibited from engaging in other employment while he was a board member, nor that Pacific controlled his schedule.  In short, there is no evidence that Brown was an employee of Pacifica or WBAI.

Finally, Brown cannot be held liable under the NYCHRL as an agent of Pacifica or WBAI.  Again, because the NYCHRL does not define "agent," common law principles apply. "Under New York law, 'an agency relationship exists . . . when there is agreement between the principal and the agent that the agent will act for the principal and the principal retains a degree of control over the agent.  The element of control often is deemed the essential characteristic of the principal-agent relationship.  [In addition, to] bind a principal, an agent must have authority . . . .'" <u>Saleh v. Pretty Girl, Inc.</u>, No. 09 Civ. 1769 (ENV) (RER), 2012 WL 4511372, at *9 (E.D.N.Y. Sept. 28, 2012) (quoting <u>In re Parmalat Secs. Litig.</u>, 375 F. Supp. 2d 278, 290 (S.D.N.Y. 2005)).  As discussed above, Plaintiff has not put forth any evidence to show that Pacifica or WBAI had the requisite control over Brown.  Nor has Plaintiff offered any evidence to show that Brown had the authority to act on Pacifica or WBAI's behalf.  Indeed, the undisputed evidence is that Brown does not have the authority to make personnel decisions or terminate employees on behalf of Pacifica, not the power to affect the terms and conditions of employment of Pacifica employees.  (Brown R. 56.1 Stmt. ¶ 74; Kaye Decl., Ex. 5 (Williams Dep. Tr.) at 12:20-13:5)  Accordingly, Brown cannot be held liable under the NYCHRL as an agent for Pacifica or WBAI.

### D.     Aiding and Abetting Liability Under the NYSHRL and NYCHRL

The Amended Complaint alleges that Brown aided and abetted discrimination and

retaliation against Plaintiff in violation of the NYSHRL and the NYCHRL.  (Am. Cmplt. ¶¶ 60,

65, 72, 78)  Under both laws, it is "an unlawful discriminatory practice for any person to aid,

abet, incite, compel or coerce the doing of any of the acts forbidden" by the laws.  N.Y. Exec. L.

§ 296(6); N.Y.C. Admin. Code § 8-107(6).  The "'same standards of analysis used to evaluate

aiding and abetting claims under the NYSHRL apply to such claims under the NYCHR because

the language of the two laws is "virtually identical."'"  Nelson v. City of New York, No. 11 Civ.

2732 (JPO), 2013 WL 4437224, at *14 (S.D.N.Y. Aug. 19, 2013) (quoting Feingold v. New

York, 366 F.3d 138, 158 (2d Cir. 2004)).

The Second Circuit has held that, under these provisions, "a co-worker who

'actually participates in the conduct giving rise to a discrimination claim' [may] be held liable

under the NYSHRL [and NYCHRL] even though that co-worker lacked the authority to either

hire or fire the plaintiff."  Id. (quoting Feingold, 366 F.3d at 158).  However, "accessory liability

may only be found where a primary violation has been established."  Mazyck v. Metro. Transp.

Auth., 893 F. Supp. 2d 574, 597 (S.D.N.Y. 2012).

Brown is entitled to summary judgment on Plaintiff's aiding and abetting claims

because, as discussed above in connection with Plaintiff's Section 1981 claim, Plaintiff has not

offered any evidence that Brown played any role in any actionable discriminatory act committed

against him.  See Nelson, 2013 WL 4437224, at *15 (granting defendant's motion for summary

judgment on NYSHRL and NYCHRL claims where "Plaintiff has proffered no evidence

genuinely suggesting that [defendant] had anything at all to do with the decision not to rehire

Plaintiff."); Conklin v. Cnty. of Suffolk, 859 F. Supp. 2d 415, 437 (E.D.N.Y. 2012) (granting

motion for summary judgment on aiding and abetting hostile work environment claim where

plaintiff had "failed to establish that his work environment was sufficiently severe as a matter of

law"); Robles v. Goddard Riverside Cmty. Ctr., No. 08 Civ. 4856 (LTS) (JCF), 2009 WL

1704627, at *3 (S.D.N.Y. June 17, 2009) (granting motion to dismiss NYSHRL aiding and

abetting claim against board members where plaintiff failed to allege "facts demonstrating any

participation by any such defendant in [the] discharge decision[,] nor any facts indicative of any

discriminatory motivation in connection with the Board's decision to deny [p]laintiff's

grievance").

      Moreover, as discussed below, Plaintiff has not established that Pacifica

discriminated or retaliated against him.  Because Plaintiff has not demonstrated a primary

violation, there can be no liability for aiding and abetting.  See, e.g., Benjamin v. Metro. Transp.

Auth., No. 07 Civ. 3561 (DAB), 2012 WL 3188764, at *20 (S.D.N.Y. Aug. 2, 2012) ("Because

[p]laintiff is not able to establish a primary violation [against entity employer], individual

[d]efendants . . . cannot be liable for aiding and abetting."); Virola v. XO Commc'ns, Inc., No.

05 Civ. 5056 (JG) (RER), 2008 WL 1766601, at *20 (E.D.N.Y. Apr. 15, 2008) ("An individual

may not be held liable, however, merely for aiding and abetting his own discriminatory conduct

but only for assisting another party in violating the NYHRL.") (collecting cases); Strauss v. N.Y.

State Dep't of Educ., 26 A.D.3d 67, 73 (3d Dep't 2005) ("[W]e hold that individuals cannot be

held liable under Executive Law § 296(6) for aiding and abetting their own violations of the

Human Rights Law.")).

## III.    PACIFICA IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S DISCRIMINATION CLAIMS

### A.    Applicable Law

      Claims of race discrimination brought under Section 1981 and the NYSHRL are

analyzed under the burden-shifting framework set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).  <u>Ruiz v. Cnty. of Rockland</u>, 609 F.3d 486, 491 (2d Cir. 2010) (Section 1981); <u>Dawson v. Bumble & Bumble</u>, 398 F.3d 211, 217 (2d Cir. 2005) (NYSHRL).  Under that framework, a plaintiff bears the initial burden to establish a <u>prima facie</u> case of discrimination. <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 142 (2000).  The burden then shifts to the employer to articulate "a legitimate, non-discriminatory reason" for the employment action. <u>Id.</u> (internal quotation omitted).  "[O]nce the employer produces sufficient evidence to support a nondiscriminatory explanation for its decision," the presumption raised by the <u>prima facie</u> case is rebutted and drops from the case.  <u>Id.</u> at 143.  The plaintiff "must [then] be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."  <u>Id.</u> (internal quotations omitted).  "[T]he test for summary judgment is [ultimately] whether the evidence can reasonably support a verdict in plaintiff's favor."  <u>James v. N.Y. Racing Ass'n</u>, 233 F.3d 149, 157 (2d Cir. 2000).

Discrimination claims brought under the NYCHRL "must be reviewed independently from and 'more liberally' than their federal and state counterparts."  <u>Loeffler v. Staten Island Univ. Hosp.</u>, 582 F.3d 268, 278 (2d Cir. 2009) (citing <u>Williams v. N.Y.C. Hous. Auth.</u>, 61 A.D.3d 62, 66-69 (1st Dep't 2009)).  While the <u>McDonnell Douglas</u> burden-shifting framework still applies, at the final step the plaintiff has a "lesser burden of raising an issue as to whether the action was motivated at least in part by discrimination or, stated otherwise, was more likely than not based in whole or in part on discrimination."  <u>Melman v. Montefiore Med. Ctr.</u>, 98 A.D.3d 107, 128 (1st Dep't 2012) (internal quotations, citations, and alterations omitted); <u>but</u> <u>see</u> <u>Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.</u>, 715 F.3d 102, 110 n.8 (2d

Cir. 2013) (observing that it is "unclear" how the NYCHRL "mixed motives theory of liability" differs from the federal standard, under which "'the plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the motivating factors'") (quoting Garcia v. Hartford Police Dep't, 706 F.3d 120, 127 (2d Cir. 2013)).

B.     **Analysis**

1.     **Plaintiff Has Not Made Out a Prima Facie Case of Discrimination**

In order to establish a prima facie case of employment discrimination, a plaintiff must "introduce[] evidence that raises a reasonable inference that action taken by [his] employer was based on an impermissible factor."  Stofsky v. Pawling Cent. Sch. Dist., 635 F. Supp. 2d 272, 297 (S.D.N.Y. 2009).  A prima facie case requires that the plaintiff show:  "(1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination."  Ruiz, 609 F.3d at 492 (Section 1981); accord Drew v. Plaza Const. Corp., 688 F. Supp. 2d 270, 281 (S.D.N.Y. 2010) (NYSHRL and NYCHRL).

Here, Plaintiff has not offered evidence that would permit a reasonable jury to find that his suspension and termination occurred under circumstances giving rise to an inference of discrimination.[4]

---

[4]  To the extent that Plaintiff alleges that Pacifica did not properly investigate his September 2007 complaint, such conduct does not constitute an adverse employment action for purposes of stating a prima facie case of employment discrimination.  See Aka v. Jacob K. Javits Convention Ctr. of N.Y., No. 09 Civ. 8195 (FM), 2011 WL 4549610, at *14 n.10 (S.D.N.Y. Sept. 30, 2011) ("To the extent that [plaintiff] asserts a discrimination claim against [defendant] for its failure to adequately investigate his complaints . . . ., his claim is without merit.  [Plaintiff] has not shown that [defendant's] alleged failure to investigate his complaint . . . constituted an adverse

> It is well-settled that an inference of discriminatory intent may be derived from a variety of circumstances, including, but not limited to. . . the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.

Leibowitz v. Cornell Univ., 584 F.3d 487, 502 (2d Cir. 2009) (internal quotation omitted).  Here, Plaintiff argues that Brown's emails and posting show racially discriminatory animus.[5]

Assuming arguendo that Brown's emails and postings show discriminatory animus, they provide no basis for denying summary judgment.  The critical question here is whether those involved in the decision to suspend and terminate Plaintiff – Williams, Aaron, and Anderson – acted with discriminatory animus.  Brown's emails are not probative on that point because, as discussed above, he played no role in Plaintiff's suspension or termination.  Stated another way, no jury could rationally infer from Brown's emails and postings that Williams, Aaron, and Anderson acted with discriminatory intent.  See Tomassi v. Insignia Fin. Group, Inc., 478 F.3d 111, 115-16 (2d Cir. 2007) ("[R]emarks made by someone other than the person who made the decision adversely affecting the plaintiff may have little tendency to show that the decision-maker was motivated by the discriminatory sentiment expressed in the remark."); McLee v. Chrysler Corp., 109 F.3d 130, 137 (2d Cir. 1997) (evidence of racial bias on part of

---

employment action."); Price v. Cushman & Wakefield, Inc., 808 F. Supp. 2d 670, 690 (S.D.N.Y. 2011) ("Defendants' failure to follow up on [plaintiff's] claims of discrimination is not an adverse employment action."); Hayes v. Kerik, 414 F. Supp. 2d 193, 203 (E.D.N.Y. 2006) ("Defendants are correct in their contention that plaintiff's allegations . . . that [defendants] failed to properly investigate her . . . complaint of discrimination, do[es] not constitute [an] adverse employment action[].").

[5]  Plaintiff alleges that the termination of other individuals around the same time also demonstrates Pacifica's discriminatory animus.  (Kaye Decl., Ex. 7 (White Dep. Tr.) at 62:20-23)  There is no evidence in the record concerning the race of the people hired to replace the terminated employees, however.  Nor is there any other evidence suggesting that the other terminations took place under circumstances giving rise to an inference of discrimination. (Pacifica R. 56.1 Stmt. ¶ 56; Kaye Decl., Ex. 7 (White Dep. Tr.) at 68:13-22)

employee who did not make decision to fire plaintiff, and was not consulted about decision, "provide[s] no basis for imputing to . . . [the decision-maker] an invidious motivation for discharge").

As to the individuals responsible for Plaintiff's suspension and termination – Williams, Aaron, and Anderson – no jury could rationally infer that they acted with discriminatory intent.  Although "[t]he Supreme Court has 'rejected any conclusive presumption' that an employer or, presumably, his agents, will not discriminate against members of their own race or gender[,]" Feingold, 366 F.3d at 155 (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 78 (1998)), the fact that both Williams and Anderson are African-American (Pacifica R. 56.1 Stmt. ¶¶ 4, 40) undermines any possible inference of discriminatory animus. See, e.g., Eder v. City of N.Y., No. 06 Civ. 13013 (RWS), 2009 WL 362706, at *8 (S.D.N.Y. Feb. 12, 2009) (Plaintiff and his "immediate supervisor [–] who assessed Plaintiff's performance and determined that it was lacking [–] are members of the same protected class. . . . Thus, any inference of discrimination, without additional evidence, is not warranted."); Tucker v. New York City, No. 05 Civ. 2804 (GEL), 2008 WL 4450271, at *5 (S.D.N.Y. Sept. 30, 2008) ("[A]ny inference of race discrimination is further undermined by the fact that all three superintendents under whom [plaintiff] worked as well as three of his four direct supervisors . . . were also African-American."); Toliver v. Cmty. Action Comm'n, 613 F. Supp. 1070, 1074 (S.D.N.Y. 1985), aff'd, 800 F.2d 1128 (2d Cir. 1986) (where decision-maker is in the same protected class as plaintiff, claims of discrimination are less plausible).

Plaintiff contends that the fact that Williams is African-American is not dispositive because her superiors are Caucasian, and "[t]hus it is entirely possible that Williams was merely carrying out the order of her superiors."  (Pltf. Pacifica Opp. Br. 17)  This

speculation is directly refuted by evidence in the record, however, as Williams testified that it was she, Aaron, and Anderson who decided to suspend and ultimately fire Plaintiff.  (Kaye Decl., Ex. 5 (Williams Dep. Tr.) at 15:3-5, 15:16-17:10, 18:5-8, 20:17-22; Pacifica R. 56.1 Stmt. ¶¶ 41, 47-48; Pltf. R. 56.1 Stmt. ¶¶ 83-84)  There is no evidence that any superior – whether Caucasian or otherwise – played any role in the suspension and termination decisions.

Moreover, not only are two of the three decision-makers here African-American, Plaintiff's replacement – Tony Bates – is also African-American.  (Pacifica R. 56.1 Stmt. ¶ 54) The fact that Plaintiff was replaced by a member of the same protected class further undermines any inference of discriminatory intent.  See, e.g., Pearson v. Lynch, No. 10 Civ. 5119, 2012 WL 983546, at *8 (S.D.N.Y. Mar. 22, 2012) ("An inference of discriminatory intent does not exist when the plaintiff and his or her replacement are of the same protected category."); DeJesus v. Dist. One Cmty. Educ. Council, No. 08 Civ. 10666, 2010 WL 3959624, at *4 (S.D.N.Y. Sept. 14, 2010) ("The fact that plaintiff's immediate replacement is of the same protected classes effectively precludes plaintiff from establishing that her termination occurred under the requisite circumstances giving rise to an inference of discrimination."); Fleming v. MaxMara USA, Inc., No. 06 Civ. 6357, 2010 WL 1629705, at *9 (E.D.N.Y. Apr. 21, 2010) (plaintiff's discrimination claim was "clearly meritless" where plaintiff was replaced by a member of her own protected class and failed to present "'other facts from which the inference' of discrimination could be drawn");  Pilgrim v. McGraw-Hill Cos., Inc., 599 F. Supp. 2d 462, 480 (S.D.N.Y. 2009) ("'Where no evidence giving rise to an inference of discrimination has been presented, the fact that a plaintiff is replaced with an individual within his protected class undermines his attempt to establish a prima facie case of discrimination.'") (quoting Randolph v. CIBC World Mkts., No. 01 Civ. 11589, 2005 WL 704804, at *12 (S.D.N.Y. Mar. 29, 2005)); Montanile v. Natl.

Broadcast Co., 211 F. Supp. 2d 481, 487 (S.D.N.Y. 2002) ("That a plaintiff is replaced by another in the same protected class weighs heavily against the inference that she suffered discrimination."), aff'd, 57 F. App'x 27 (2d Cir. 2003).

In sum, Plaintiff has not offered any evidence raising an inference of discriminatory intent on the part of those involved in the suspension and termination decisions. Accordingly, "drawing all permissible factual inferences in [P]laintiff's favor," he has not met the "low threshold" and minimal showing necessary to make out the fourth element of a prima facie case, and Pacifica is entitled to summary judgment on Plaintiff's discrimination claims. Holcomb, 521 F.3d at 139 (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993)).

### 2.   Pacifica Has Articulated Legitimate, Non-Discriminatory Reasons for Plaintiff's Suspension and Termination

Even if Plaintiff had established a prima facie case, Pacifica would still be entitled to summary judgment, because it has offered legitimate, non-discriminatory reasons for terminating Plaintiff's employment:  WBAI had suffered years of declining fundraising and listenership, both of which were Plaintiff's responsibility as Program Director.  In addition, other WBAI staff members, some of whom are African-American, complained that Plaintiff was abusive and hostile.  (Kaye Decl., Ex. 5 (Williams Dep. Tr.) at 18:11-20:4; Pacifica R. 56.1 Stmt. ¶ 49)

To defeat summary judgment, Plaintiff must "raise[] sufficient evidence upon which a reasonable jury could conclude by a preponderance of the evidence that the decision to fire him was based, at least in part, on the fact" that he is African-American.  Holcomb, 521 F.3d at 141.  Plaintiff attempts to meet this burden by showing that Defendant's "stated reason[s] for the adverse employment action [are] . . . pretextual."  Id. (explaining that "in many cases, a showing of pretext, when combined with a prima facie case of discrimination, will be enough to

permit a rational finder of fact to decide that the decision was motivated by an improper

motive").  The pretext "inquiry is directed toward determining whether the articulated purpose is

the actual purpose for the challenged employment-related action."  DeMarco v. Holy Cross High

Sch., 4 F.3d 166, 170-71 (2d Cir. 1993).  "[A]n employer may terminate an employee for a good

reason, bad reason, or no reason at all, [of course,] provided such reason is not discriminatory."

Gobin v. N.Y. City Health & Hosp. Corp., No. 04 Civ. 3207 (WHP), 2006 WL 2038621, at *7

(S.D.N.Y. July 19, 2006).  "In other words, 'a reason cannot be proved to be a pretext for

discrimination unless it is shown both that the reason was false, and that discrimination was the

real reason.'"  Wolf v. Time Warner, Inc., 2012 WL 4336232, at *9 (S.D.N.Y. Sept. 17, 2012)

(quoting Hicks, 509 U.S. at 515).

       Here, Plaintiff argues that Pacifica's reasons are pretextual because Williams is

not familiar with WBAI's revenue or ratings, and therefore "it is highly doubtful that Williams

came to the[] conclusion[] and made the decision by herself" to suspend and terminate Plaintiff.

(Pltf. Pacfica Opp. Br. 18; see also id. at 20-21)  Plaintiff ignores undisputed evidence that

Williams spent two weeks in New York assessing WBAI's condition.  (Pacifica R. 56.1 Stmt. ¶

36; Pltf. R. 56.1 Stmt. ¶¶ 76, 81)  In any event, Plaintiff's speculation that someone other than

Williams, Aaron, and Anderson was responsible for his suspension and termination cannot defeat

Pacifica's summary judgment motion.  See Smith v. Am. Express Co., 853 F.2d 151, 154-55 (2d

Cir. 1988) (affirming summary judgment where plaintiff offered only conclusory and

substantially unsupported assertions that employer's proffered race-neutral rationale for denial of

promotion was pretextual).

       While Plaintiff blames WBAI's poor fundraising on other factors – such as the

2008 recession (see Pltf. Pacfica Opp. Br. 20) – a disagreement about the reasons for job

performance does not establish pretext.  "[F]aulting others for, or otherwise rationalizing, problems legitimately perceived by [an] employer does not establish pretext." <u>Taylor v. Polygram Records</u>, No. 94 Civ. 7689 (CSH), 1999 WL 124456, at *10 (S.D.N.Y. 1999). "[Plaintiff]'s fundamental disagreement with the conclusions [his] supervisors drew from incidents which [he] admits occurred, and [his] subjective belief that they should not have reflected badly on [his] performance because they were someone else's fault, is not evidence that [his] supervisors' appraisals were a sham, invented to mask discrimination." <u>Id.</u>; <u>see</u> <u>also</u> <u>Revere v. Bloomingdale's, Inc.</u>, No. 03 Civ. 5043 (SLT) (WDW), 2006 WL 3314633, at *8 (E.D.N.Y. Nov. 14, 2006) (plaintiff cannot establish pretext by blaming her job performance on "[d]efendant's discriminatory agenda").

    Finally, Plaintiff argues that the lack of documents related to the committee formed to investigate WBAI, and the fact that he did not know the committee existed, demonstrate that Pacifica's purported reasons for suspending and terminating him are pretext. (Pltf. Pacfica Opp. Br. 19-20)  Even accepting Plaintiff's argument, however, he has not offered any evidence to show that he was actually suspended and terminated on account of his race.  <u>See Schnabel v. Abramson</u>, 232 F.3d 83, 88 (2d Cir. 2000) ("A jury . . . could conclude that defendants' stated reasons for firing plaintiff were pretextual.  Nevertheless, plaintiff has not demonstrated that the asserted pretextual reasons were intended to mask . . . discrimination."); <u>Stanojev v. Ebasco Servs., Inc.</u>, 643 F.2d 914, 924 (2d Cir. 1981) ("[A]lthough [defendant's] nonproduction of these documents might have been relevant to show pretext had [plaintiff] established a <u>prima</u> <u>facie</u> case, the nonproduction alone does not support an inference of discrimination.").

Plaintiff has not demonstrated a material issue of fact as to Pacifica's legitimate, non-discriminatory reasons for suspending and terminating him.[6]  He has likewise not offered evidence "sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination."  Stern v. Trs. of Columbia Univ., 131 F.3d 305, 312 (2d Cir. 1997).  Accordingly, Pacifica is entitled to summary judgment on Plaintiff's Section 1981 and NYSHRL discrimination claims, as well as his claim under the broader NYCHRL.  See, e.g., Lennert-Gonzalez v. Delta Airlines, Inc., No. 11 Civ. 1459 (JMF), 2013 WL 754710, at *8 (S.D.N.Y. Feb. 28, 2013) (granting defendant-employer's motion for summary judgment on Title VII, NYSHRL, and NYCHRL claims when there was no evidence to indicate that defendant acted "even in part" with a discriminatory motive).

## IV.   PACIFICA IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S RETALIATION CLAIMS

### A.   Applicable Law

Plaintiff's retaliation claims – brought pursuant to the NYSHRL and the NYCHRL – are also analyzed under the three-step McDonnell Douglas burden-shifting framework.  See, e.g., Kemp v. Metro-North R.R., No. 04 Civ. 9926, 2007 WL 1741256, at *16 (S.D.N.Y. June 14, 2007) ("When evaluating claims of retaliation under the . . . NYSHRL, and NYCHRL, courts use the well-known McDonnell Douglas burden-shifting framework."), aff'd, 316 F. App'x 25 (2d Cir. 2009).

"The initial step of this familiar framework requires the plaintiff to establish a prima facie case of retaliation."  Mayers v. Emigrant Bancorp, Inc., 796 F. Supp. 2d 434, 446 (S.D.N.Y. 2011) (citing, inter alia, Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d

---

[6]  Plaintiff does not address in any fashion Pacifica's contention that Plaintiff was terminated in part because of other WBAI staff members' complaints about his behavior.

Cir. 2005).  "The burden then shifts to the defendant to articulate a legitimate, non-retaliatory rationale for its employment decision."  Id. (citing inter alia, Jute, 420 F.3d at 173).  "If the defendant articulates a non-retaliatory rationale for its employment decision, the burden shifts back to the plaintiff to show that the defendant's proffered explanation is a pretext for unlawful retaliation."  Id. at 447 (citing inter alia, Jute, 420 F.3d at 173).  "At this stage of the inquiry, merely disproving the defendant's legitimate explanation is insufficient; the plaintiff must produce competent evidence that 'the employer's decision was motivated, at least in part, by an intent to retaliate against him.'"  Id. (quoting El Sayed v. Hilton Hotels Corp., 627 F.3d 931, 933 (2d Cir. 2010)).  "A retaliatory motive must be . . . at least a substantial or motivating factor behind the adverse action."  Raniola v. Bratton, 243 F.3d 610, 625 (2d Cir. 2001) (internal quotation omitted).

>   **B.**     **Analysis**

>>   **1.   Plaintiff Has Failed to Make Out a Prima Facie Case of Retaliation**

"To establish a prima facie case of unlawful retaliation under the NYSHRL, 'a plaintiff must prove that:  (1) he participated in a legally protected activity; (2) his employer knew of the protected activity; (3) an adverse employment action ensued; and (4) a causal connection existed between the protected activity and the adverse employment action.'"  Stavis v. GFK Holding, Inc., 769 F. Supp. 2d 330, 339 (S.D.N.Y. 2011) (quoting Bowles v. N.Y.C. Transit Auth., 285 F. App'x 812, 814 (2d Cir. 2008)); accord, e.g., Forrest v. Jewish Guild for the Blind, 3 N.Y.3d 295, 312-13 (2004).  "Under the NYCHRL[,] the elements of retaliation are identical except that the plaintiff need not prove any 'adverse' employment action; instead, he must prove that something happened 'that would be reasonably likely to deter a person from

engaging in protected activity.'"  Jimenez v. City of N.Y., 605 F. Supp. 2d 485, 528 (S.D.N.Y. 2009) (citing N.Y.C. Admin. Code § 8-107(7)).

Here, Plaintiff contends  that he engaged in protected activity when he sent his May 4, 2009 complaint to the Pacifica National Board, incorporating his September 2007 complaint, which alleged that he was the victim of discrimination by Brown.  (Pltf. Pacifica Opp. Br. 23)  Plaintiff further contends that his second suspension on May 8, 2009, and his termination on May 18, 2009 constitute retaliation for this complaint.[7]  (Id. at 23-24)  Even assuming that these allegations are sufficient to make out the first three elements of a prima facie case, Plaintiff has failed to demonstrate any causal connection between his protected activities and adverse employment actions.

A causal connection can be established by showing that "the retaliatory action occurred close in time to the protected activities."[8]  McNair v. N.Y. City Health & Hosp. Co., 160 F.Supp.2d 601, 604 (S.D.N.Y. 2001) (citing DeCintio v. Westchester Cnty. Med. Center, 821 F.2d 111, 115 (2d Cir. 1987)).  To establish a causal connection based on temporal proximity, "a plaintiff must, at a minimum, introduce evidence that the protected activity in

---

[7]  In the Amended Complaint, Plaintiff alleges that Defendants also retaliated against him by "failing to address [his] complaints" (Am. Cmplt. ¶ 64) and/or by "dismissing [his] complaints." (Id. ¶ 77)  To the extent that Plaintiff continues to press this argument, such conduct does not constitute an adverse employment action for purposes of stating a prima facie case of retaliation. Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 721 (2d Cir. 2010) ("[A]t least in a run-of-the-mine case such as this one, an employer's failure to investigate a complaint of discrimination cannot be considered an adverse employment action taken in retaliation for the filing of the same discrimination complaint."); Milne v. Navigant Consulting, No. 08 Civ. 8964 (NRB), 2010 WL 4456853, at *8 (S.D.N.Y. Oct. 27, 2010) (applying Fincher and holding that "on these facts [there is] no reason to distinguish between . . . rulings under federal, state, and city law").

[8]  A causal connection can also be established by "(1) direct proof of retaliatory animus directed against the plaintiff [or] (2) disparate treatment of similarly situated employees. . . ."  McNair, 160 F. Supp. 2d at 604 (citing DeCintio, 821 F.2d at 115).  Here, Plaintiff has offered no evidence of (1) disparate treatment of similarly situated employees, or (2) retaliatory animus on the part of the decision-makers responsible for his suspension and termination.

question occurred before the adverse employment action." Carmellino v. Dist. 20 of N.Y. City

Dep't of Educ., No. 03 Civ. 5942 (PKC), 2006 WL 2583019, at *19 (S.D.N.Y. Sept. 6, 2006).

"Where there is evidence that the employer was considering the adverse employment action

before any protected activity, . . . an employer's 'proceeding along lines previously

contemplated, though not yet definitively determined, is no evidence whatever of causality.'" Id.

(quoting Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 272 (2001)).

   Here, Plaintiff re-sent his complaint to the Pacifica National Board on May 4,

2009. (Pacifica R. 56.1 Stmt. ¶ 67; Kaye Decl., Ex. 8 at PAC197-99) An April 19, 2009

memorandum from Pacifica's Executive Director to WBAI's General Manager shows, however,

that Pacifica was already contemplating firing Plaintiff for poor performance.[9] (Pacifica R. 56.1

Stmt. ¶ 39; Kaye Decl., Ex. 11) Williams also testified that she had discussions with Aaron and

Anderson in April 2009 about terminating Plaintiff for poor performance. (Pltf. R. 56.1 Stmt. ¶

75) Moreover, Plaintiff had been notified of his first three-day suspension before he sent his

May 4, 2009 complaint. (Pacifica R. 56.1 Stmt. ¶ 44; Pltf. R. 56.1 Stmt. ¶ 43) That suspension

was due to Plaintiff's calling Brown "fecal matter" while on the air. (Pacifica R. 56.1 Stmt. ¶¶

43-44; Boyd Aff., Ex. E at PAC197) In sum, Pacifica's decision to address Plaintiff's poor

performance and misconduct was set in motion before Plaintiff sent his May 4, 2009 complaint.

   The fact that Pacifica later decided to suspend Plaintiff again and ultimately to

terminate him – after he sent the May 4, 2009 complaint – is not proof of retaliation, because it is

clear that Pacifica was "proceeding along lines previously contemplated, though not yet

definitively determined . . . ." Breeden, 532 U.S. at 272; see also Slattery v. Swiss Reinsurance

---

[9]  Plaintiff's employment had already been terminated once before – in 2000 – as a result of "a
lawsuit brought by some listeners, as well as some staff people, against the board as it existed at
the time." (Kaye Decl., Ex. 7 (White Dep. Tr.) at 16:2-10))

Am. Corp., 248 F.3d 87, 95 (2d Cir. 2001) ("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise.").  Accordingly, the temporal proximity between Plaintiff's May 4, 2009 complaint and his suspension and termination "is no evidence whatever of causality."  Breeden, 532 U.S. at 272.

Plaintiff has likewise not shown any causal connection between his earlier complaints – made orally to board members in 2003 and 2006, and in writing in September 2007 – and his suspension and termination in May 2009.  "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close."  Breeden, 532 U.S. at 273 (internal quotation omitted).  "Action taken (as here) 20 months later suggests, by itself, no causality at all."  Id. at 274.

Plaintiff has not met the "de minimis" burden necessary "to survive a summary judgment motion at the prima facie stage."  Slattery, 248 F.3d at 94 (internal quotation omitted) (affirming summary judgment for employer on plaintiff's retaliation claim where adverse job actions began before plaintiff engaged in protected activity).  Accordingly, Pacifica is entitled to summary judgment on Plaintiff's retaliation claims.[10]

---

[10]  Even if Plaintiff had established a prima facie case of retaliation, Pacifica would still be entitled to summary judgment because, for the reasons discussed above, it has offered legitimate non-discriminatory reasons for Plaintiff's suspension and termination, and Plaintiff has demonstrated no material issue of fact as to pretext.

## **CONCLUSION**

For the reasons stated above, Pacifica and Brown's motions for summary

judgment are GRANTED.  The Clerk of Court is respectfully requested to terminate the motions

(Dkt. Nos. 34, 45) and to close this case.

Dated: New York, New York
       September 16, 2013

SO ORDERED.

_____

Paul G. Gardephe
United States District Judge